A99A0518, A99A0519. CITY OF VIDALIA v. BROWN et al.; and vice versa.
(516 SE2d 851)

ANDREWS, Judge.

Mona Lisa Brown sued the City of Vidalia alleging she was injured when she stepped in a hole located on City-owned property and fell. Brown's husband joined in the suit by bringing a loss of consortium claim. The Browns sought to recover damages from the City under two theories alleged in their complaint: first, that the hole was a defect in a public street or sidewalk for which the City was liable in negligence under OCGA § 32-4-93, and second, that the hole was a nuisance for which the City was liable. The trial court granted summary judgment in favor of the City on the negligence claim but denied the City's motion for summary judgment on the nuisance claim. In Case No. A99A0518, we granted the City's application for an interlocutory appeal from the denial of summary judgment on the nuisance claim. In Case No. A99A0519, the Browns appeal from the grant of summary judgment in favor of the City on the negligence claim.

1. First, we address the Browns' claim that the City was liable pursuant to OCGA § 32-4-93 for negligently failing to properly maintain a City street or sidewalk.

Ms. Brown testified that she stepped in a hole, fell, and was injured when she and her children were walking from house to house in a residential subdivision of Vidalia while trick-or-treating on Halloween night. The houses faced Clyde Boulevard, a paved street running down the middle of a 50-foot wide right-of-way owned by the City. The paved street was nineteen feet, four inches wide, leaving a distance of fifteen feet, four inches on both sides of the street from

the edge of the pavement to the boundary line between the City right-of-way and the front yards of the houses. In addition to maintaining the paved street, the City maintained an unpaved street shoulder five feet, four inches wide immediately adjacent to the pavement on both sides of the street. The remaining ten-foot strip on both sides of the street from the outer edge of the street shoulder to the boundary line of the City right-of-way contained a drainage system for the residential subdivision and various public utility lines.

The hole at issue, which was about three feet long and one and a half feet wide, was in a grassy area about nine feet from the edge of the paved street, placing it within the above-described ten-foot wide strip constituting the outer portion of the City right-of-way. The hole was between a residential mailbox located about eight feet from the edge of the paved street and a telephone pole and a television cable box located about 15 feet from the edge of the paved street. Ms. Brown testified that she stood in front of a house watching her children obtain Halloween treats at the house. The house had a driveway which provided a safe means of access from the house to the street. When her children left the house, Ms. Brown walked parallel to the street across the driveway of the house into the grassy drainage area between the mailbox and the telephone pole and cable box and stepped into the hole. She said the area was generally illuminated by porch lights from the houses, but she did not see the hole before she stepped into it. The grass in the area had been mowed by the occupant of the house, so the hole was not obscured.

City officials denied having any actual knowledge of the hole, but the occupant of the house located in front of the hole said she notified the City about the hole 11 months prior to the date of the accident. Excluding nonprobative hearsay, there was no evidence as to who dug the hole. The public works director for the City deposed that the area in which the hole was located was not part of the City street "nor has said area ever been maintained, accepted, dedicated, or intended by the City of Vidalia for use as a municipal street or sidewalk."

Section 32-4-93 (a) provides that:

A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

This Code section is an exception to the general rule that a city enjoys sovereign immunity from liability for negligent acts done in

the exercise of a governmental function. OCGA § 32-4-93 (a) imposes liability on a municipality, not only for the negligent failure to keep city streets free from defects, but also city sidewalks, which are deemed part of the streets. *City of Atlanta v. Hampton*, 139 Ga. 389, 391 (77 SE 393) (1913); *Hammock v. City Council of Augusta*, 83 Ga. App. 217 (63 SE2d 290) (1951). A city has the duty to use ordinary care to keep city streets and sidewalks in a reasonably safe condition for use by persons in the ordinary methods of travel. *City of Marietta v. Godwin*, 106 Ga. App. 113, 117 (126 SE2d 302) (1962); *City of Barnesville v. Sappington*, 58 Ga. App. 27, 28 (197 SE 342) (1938). Thus, a city is liable for defects in streets and sidewalks negligently caused by its own agents or employees. Id. Likewise, a city is liable for such defects caused by strangers or forces of nature, where the city had notice of the defect and failed to exercise ordinary care to remove it, or where the defect had existed for such a length of time that it would be reasonable to conclude the city should have learned of the defect and exercised ordinary care to remove it. Id.

Nevertheless, where a plaintiff alleges that the defective condition which caused injury was located on a part of the city's street and sidewalk system, there must be some evidence that the defect was located in an area accepted by the city, either expressly or by implication, for use as a street or sidewalk, before the city can be charged with liability for negligently failing to maintain the area in a reasonably safe condition. *Kesot v. City of Dalton*, 94 Ga. App. 194, 198 (94 SE2d 90) (1956). Even where a sidewalk is established, a city is only required to keep in reasonably safe condition all parts thereof intended to be used by the public. *City of Atlanta v. Milam*, 95 Ga. 135, 137 (22 SE 43) (1894); *City Council of Augusta v. Tharpe*, 113 Ga. 152 (38 SE 389) (1901); *Hammock*, 83 Ga. App. 217. For example, the public is not generally expected to use areas on the margins of a sidewalk occupied by obstructions such as telephone poles, water-plugs, and trees. *Milam*, 95 Ga. at 136-137; compare *Haygood v. City of Marietta*, 108 Ga. App. 99, 102-103 (131 SE2d 856) (1963) (grass plot between the sidewalk and the street curb may be considered a part of the sidewalk where use of the grass plot is not forbidden or restricted).

Although there was no paved sidewalk adjacent to the street, evidence showed that pedestrians ordinarily walked along the edge of the paved street or on the unpaved street shoulder. However, the hole at issue was not located on the paved street, nor was it located on the adjacent unpaved five-foot, four-inch wide strip maintained by the City as the shoulder of the paved street. Rather, the hole was located an additional four feet outside the street shoulder (a total distance of approximately nine feet from the edge of the paved street) in the grassy drainage area which also contained public utility lines

and a residential mailbox. Moreover, the hole was situated between the residential mailbox located about eight feet from the paved street and a telephone pole and cable television box located about 15 feet from the street. There was no evidence that the area where the hole was located was expressly or by implication accepted by the City as a sidewalk. *Kesot*, 94 Ga. App. at 196-198. In fact, the nature of the area, along with the obstructions adjacent to the hole, showed the area was not intended for use by the public as a sidewalk, and there was no evidence that the public commonly used the area for walking. Evidence that Ms. Brown and other trick-or-treaters cut across this area while canvassing houses on Halloween night did not transform the area into a sidewalk which the City was required to keep in a reasonably safe condition for pedestrians.

The record plainly and indisputably shows that the hole was not located on a City street or sidewalk. Accordingly, the trial court correctly granted summary judgment in favor of the City on the Browns' claim that the hole was a defective condition which the City negligently allowed to exist on a street or sidewalk. Id.

2. The City also moved for summary judgment on the Browns' claim that the hole constituted a nuisance for which the City was liable.

The Browns claimed that the existence of the hole within the boundary of the 50-foot wide City right-of-way constituted a nuisance. As discussed in Division 1, supra, the hole was not located in an area intended or accepted by the City as a street or sidewalk, and there was no evidence that the area was commonly used by pedestrians. Other than Ms. Brown's testimony that some people walked in the area while trick-or-treating on the Halloween night at issue, there is no evidence that the area had been used for walking. Accordingly, as we concluded in Division 1, supra, the City had no duty to keep the area in which the hole was located reasonably safe as a street or sidewalk. To the contrary, the evidence showed that the hole was located about nine feet from the edge of the paved street near the middle of the ten-foot wide strip used as a drainage area which also contained public utility lines and a residential mailbox. The record further showed that the hole was dug to allow water to drain into a pipe, and that the hole and pipe were part of a City drainage system running through the area. Although there was no evidence as to who dug the hole, it was undisputed that the hole formed part of a drainage system maintained by the City. There was also evidence that the City had been informed of the existence of the hole 11 months prior to Ms. Brown's accident. There was evidence that one other trick-or-treater stepped in the hole shortly after Ms. Brown's accident, but there was no evidence that anyone had stepped into or otherwise been harmed by the hole prior to Ms. Brown's accident. Thus, the

issue is whether on these facts the trial court was correct in concluding that a jury issue was presented on the nuisance claim.

Regardless of whether a city is exercising a governmental function under the shield of sovereign immunity or a ministerial function, it may be held liable for damages it causes by the creation or maintenance of a nuisance. *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 837-838 (165 SE2d 141) (1968); *City of Thomasville v. Shank*, 263 Ga. 624 (437 SE2d 306) (1993). In order to establish the existence of a nuisance, the guidelines set forth by the Supreme Court in *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (256 SE2d 782) (1979) require proof that: (1) the defect or degree of misfeasance rose to a level exceeding the concept of mere negligence; (2) the act was of some duration and the maintenance of the act or defect was continuous or regularly repetitious, and (3) the City failed to act within a reasonable time after knowledge of the defect or dangerous condition.

The defect or misfeasance alleged by the Browns in this case was that the City allowed the drainage hole to remain within the City right-of-way and thus failed to keep the area where the hole was located reasonably safe for Ms. Brown to walk. There was evidence to support the second and third guidelines set forth in *City of Bowman* in that the Browns produced evidence that the hole had been continuously in the City right-of-way as part of the City-maintained drainage system for as long as 11 months and that the City had knowledge of the hole. As to the first *City of Bowman* guideline, however, the evidence was insufficient as a matter of law to support the conclusion that the alleged defect or degree of misfeasance rose to a level exceeding the concept of mere negligence.

Because the evidence showed the hole was not located in the area of a City street or sidewalk, there was no basis to claim the City had a duty to remove the hole to keep the area in which it was located safe for Ms. Brown to walk across as a street or sidewalk. It follows the City was not negligent and therefore did not maintain a nuisance by failing to keep safe its streets or sidewalks. See Division 1, supra.

The only other evidence produced by the Browns in opposition to summary judgment on the nuisance claim was that the hole was located on the City right-of-way as part of a drainage system maintained by the City. Accordingly, the Browns argue that, even if the hole was not located on a City street or sidewalk, it was located on a portion of a City right-of-way which the City had a duty to keep safe for Ms. Brown to walk.

The maintenance of the drainage system was a governmental function of the City. *City of East Point v. Terhune*, 144 Ga. App. 865, 866 (242 SE2d 728) (1978); *Foster v. Crowder*, 117 Ga. App. 568 (161 SE2d 364) (1968). Accordingly, if the City had negligently con-

structed or undertaken to maintain the drainage system in a manner which caused repeated flooding of property, a continuing, abatable nuisance would be established. *City of Rome v. Turk*, 235 Ga. 223 (219 SE2d 97) (1975); *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996); *Keller v. City of Toccoa*, 137 Ga. App. 15 (223 SE2d 1) (1975). However, the Browns' entirely different claim is that a nuisance was established because the City failed to maintain the drainage area at issue in a safe condition for her to walk across. The evidence clearly shows that the drainage area where the hole was located was not intended as an area for common use by pedestrians. The hole was located about nine feet outside of the paved street between a residential mailbox and a telephone pole and cable television box. There was no evidence that the drainage area was commonly used as a walkway, and there was no evidence that anyone else had stepped into or been harmed by the hole prior to Ms. Brown's accident.

Although the City might have anticipated that someone could walk across the drainage area, and could have made the area safer by removing or otherwise covering the hole, we cannot say under the circumstances that the failure to do so could be reasonably construed as a defect or degree of misfeasance in excess of mere negligence. *Denson v. City of Atlanta*, 202 Ga. App. 325, 327-328 (414 SE2d 312) (1991); *Shuman v. Mayor &c. of Savannah*, 180 Ga. App. 427 (349 SE2d 239) (1986); see *Brooks v. Logan*, 134 Ga. App. 226, 229 (213 SE2d 916) (1975) (party not liable for hole not so close to the traveled way as to constitute a peril to those lawfully using the roadway); compare *Horton v. City of Macon*, 144 Ga. App. 380 (241 SE2d 311) (1977). "[T]he issue of whether a condition creates a public nuisance is generally a fact question for a jury. [Cit.] However, some factual settings turn the issue into one of law." *City of Atlanta v. MARTA*, 262 Ga. 743, 745 (425 SE2d 862) (1993). Without addressing whether the City was negligent, we conclude there was no evidence of a defect or degree of misfeasance in excess of mere negligence sufficient to establish a nuisance. *City of Bowman*, 243 Ga. at 811. Accordingly, the trial court erred by denying the City's motion for summary judgment on the nuisance claim.

*Judgment affirmed in Case No. A99A0519. Judgment reversed in Case No. A99A0518. McMurray, P. J., and Ruffin, J., concur in the judgment only.*

DECIDED APRIL 29, 1999 —

*Ellis, Easterlin, Peagler, Gatewood & Skipper, George M. Peagler, Jr., Andrew & Threlkeld, Reid A. Threlkeld*, for appellants.

*Callaway, Neville & Brinson, William E. Callaway, Jr., Barbara J. Nelson,* for appellees.