A05A0168. ROQUEMORE v. CITY OF FORSYTH et al.
A05A0169. McCLAY et al. v. CITY OF FORSYTH et al.

(617 SE2d 644)

ADAMS, Judge.

Dora B. Roquemore, Ann G. McClay and Virginia Griffin brought suit against the City of Forsyth and Adolph Parsons, after an automobile driven by Parsons struck Roquemore and Griffin, resulting in injuries. Roquemore, McClay and Griffin appeal the trial court's order granting summary judgment to the City of Forsyth on their claims. Because the trial court correctly concluded that no triable issue of fact exists, we affirm.

Summary judgment is appropriate when no genuine issue of material fact exists for consideration by a jury, entitling the movant to judgment as a matter of law. OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. [Cit.]" (Punctuation omitted.) *Alston v. Superior Court Clerks' Retirement Fund of Ga.*, 271 Ga. App. 143 (608 SE2d 734) (2004).

Viewed in that light, the record demonstrates that sometime after 7:00 p.m. on January 13, 1999, Ann McClay, her husband Greg McClay, her minor daughter Virginia Griffin, and her mother Dora Roquemore, paused at a curb near an intersection in Forsyth before crossing the street to their parked car. While they were stopped, both Roquemore and McClay observed Parsons's car stopped at a red light up the street. The McClays then entered the roadway first, followed by Roquemore and Griffin. As the group crossed the street, McClay looked to her right where she saw the car's headlights rapidly approaching. This may have prompted McClay and her husband to walk a little faster, but she did not feel the need to run in order to avoid the car. The next moment, however, McClay heard an impact and the sound of car tires behind her as Parsons's automobile struck Roquemore and Griffin.

On the night of the accident, Parsons stated that he did not see Roquemore and Griffin "until the last minute" before his car hit them. He later testified by affidavit that while he was stopped at the red light, he observed four people walking on the side of the road. As Parsons approached, he saw two of the people cross in front of him, but did not see the other two enter the roadway and did not realize that they were attempting to cross the street before he struck them with his car. In his deposition, however, Parsons testified that he saw all four people crossing in front of him when he was about one-half block to one block away and that he could observe them the whole time as he approached.

Parsons also testified that the lighting conditions in the area at the time were poor. When he went back the next day, he observed that the streetlight was "hanging down" and was not working. Roquemore also recalled that the area was darker than normal because the streetlight was turned so that it pointed down the street in the direction from which Parsons was driving and did not point down toward the pavement as it should.[1] This recollection was supported by a third-party witness, who testified that the area where Roquemore and Griffin were hit was very dark the night of the accident because the streetlight "was angled so that its illumination was directed away from the area in the street where the accident happened." And the police report noted that the conditions at the accident scene were "dark not light."

The streetlight in question was installed in 1997. The City of Forsyth's electrical department has the responsibility of maintaining and repairing the city's streetlights. The electrical department usually receives reports of malfunctioning lights from citizens or patrolling police officers. When an officer notices a problem with a light, the standard practice is for the officer to tie a ribbon around the pole and call in a work order to the electrical department. However, Officer Eddie Harris, who responded to the accident in this case and who patrolled the area, testified that he had never considered inspecting streetlights to be a part of his job duties as a patrolman. And he had never reported a malfunctioning light to the city. In any event, no evidence exists that any work order or any other notification was ever received by the city's electrical department with regard to the streetlight in this case.

The day after the accident, however, City of Forsyth employee Tommy Lee inspected the streetlight at the direction of a city administrator. He observed that the globe of the streetlight, which covers the mercury vapor bulb, was "tilting slightly downward" because one of the hinges was loose. Nevertheless, Lee determined that the light was functioning properly; the bulb was burning and "providing the appropriate amount of light." He stated that the loose hinge did not affect the light bulb or the output of light, but he tightened the hinge so that the globe was positioned normally.

The trial judge granted summary judgment in favor of the City of Forsyth as to the claims of Roquemore, McClay and Griffin, but did not state the basis for this holding. Roquemore, McClay and Griffin argue that the trial court erred in granting summary judgment because issues of fact exist as to whether the defective streetlight was

---

[1] McClay did not recall whether the streetlight was working or not.

a contributing factor to the accident and as to whether the city failed to implement a procedure for discovering and repairing defective streetlights.

"[T]he law is well settled in this State that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and if it fail[s] to do so, it is liable for damages for injuries sustained in consequence of such failure." (Citation and punctuation omitted.) *Mayor &c. of Savannah v. Johns*, 87 Ga. App. 719, 723 (1) (75 SE2d 342) (1953). But it is also undisputed that the decision whether to provide lighting on a particular city street is a discretionary function of a municipality. "Such lighting is a discretionary act of the municipality, and for the exercise or failure to exercise such a power no right of action accrues." (Citation omitted.) *Quinn v. Ga. Power Co.*, 51 Ga. App. 291, 293 (180 SE 246) (1935). And "[i]t would seem that the discretion to install a system of lighting would include a discretion to discontinue it." *Williams v. Mayor &c. of Washington*, 142 Ga. 281, 283 (1) (82 SE 656) (1914).

In reconciling a city's duty to maintain safe streets with its discretion in providing lighting on those streets, the Supreme Court of Georgia has held that "the character of the light at [a dangerous point in the street], or its absence, may be shown as a circumstance bearing on" the issue of whether a city has maintained a street in a reasonably safe condition, or whether it was negligent in that regard. *Williams v. Mayor &c. of Washington*, 142 Ga. at 283 (1). See also *City of Dublin v. Howell*, 68 Ga. App. 463 (23 SE2d 177) (1942); *Hall v. City Council of Augusta*, 49 Ga. App. 77 (1) (174 SE 172) (1934). But "the mere absence of an ordinary street light at a given point will not constitute such negligence as to render the city liable" if the city otherwise has performed its obligation to keep the streets safe and free from defects. *Williams v. Mayor &c. of Washington*, 142 Ga. at 283 (1). The court explained that *"neither the absence of lights nor defective lights is in itself negligence*, but is only evidence on the principal question, whether, at the time and place where an injury occurred, the streets were in a reasonably safe condition." (Emphasis supplied.) Id. at 284-285 (1). And Georgia courts have never held that "the temporary failure of a street-light to burn at a point where there is no obstruction, excavation, or other extraordinary defect in the street, gives rise to any liability against a city" or its agents. *Quinn v. Ga. Power Co.*, 51 Ga. App. at 293.

Here, there is no evidence in the record of any defect, obstruction or other dangerous condition in the street where the accident occurred. The only negligence alleged by Roquemore, McClay and Griffin is the City's failure to maintain or repair the malfunctioning

streetlight, and as these cases demonstrate, that allegation provides no basis for recovery against the City of Forsyth.

In contravention of this well-established authority,[2] however, the city concedes on appeal that it could potentially be liable if the malfunctioning streetlight, by itself, created a dangerous situation, although it argues that there is no evidence to show any such condition and further argues that it is shielded from liability under OCGA § 32-4-93 (a). Even given the city's position, we find that summary judgment was proper under OCGA § 32-4-93 (a). That statute provides that

> [a] municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

Stated positively, "municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." *Bush v. City of Gainesville*, 105 Ga. App. 381, 383 (124 SE2d 667) (1962). This Court has held that the term "defects" covered by this Code section "includes defects brought about by the forces of nature and by persons and which render the street unsafe and includes objects adjacent to and suspended over the street." (Citations omitted.) *McKinley v. City of Cartersville*, 232 Ga. App. 659, 660 (1) (503 SE2d 559) (1998).

Here, there is no evidence that any negligence on the part of city employees caused the streetlight to malfunction. In fact, the record contains no evidence at all regarding the cause of the defect. Under these circumstances, liability against the city arises only if Roquemore, McClay and Griffin can establish that the city had actual or constructive notice of the problem. See *Thompson v. City of Atlanta*, 274 Ga. App. 1, 2 (1) (616 SE2d 219) (2005); *City of Vidalia v. Brown*, 237 Ga. App. 831, 833 (1) (516 SE2d 851) (1999). And here there is no evidence that the city had actual notice of the defect, nor is there any evidence that the problem with the streetlight had existed for any appreciable length of time so as to give rise to an issue of constructive notice. In fact, the only evidence on this point was Roquemore's

---

[2] See Zitter, Liability of Municipal Corporation or Electric Utility for Injury Resulting from Inoperative, Malfunctioning, or Otherwise Defective Streetlight, 111 ALR5th 579, §§ 3, 18 (2003).

testimony that she did not recall any problems with the streetlight when she was in the area one week before the accident. Accordingly, the City of Forsyth is relieved of all potential liability for the malfunctioning streetlight under OCGA § 32-4-93 (a), and the trial court properly granted its motion for summary judgment. *City of Vidalia v. Brown*, 237 Ga. App. at 833.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 14, 2005.

*Sell & Melton, Mitchel P. House, Jr., Jeffrey B. Hanson, Clark & Bellamy, Stephen R. Sullivan*, for appellants.

*Sommers, Scrudder & Bass, Glenn S. Bass*, for appellees.