**November 12, 2014**

# In the Court of Appeals of Georgia

A14A0768. CITY OF ATLANTA v. KOVALCIK et al.                 DO-040

DOYLE, Presiding Judge.

In this interlocutory appeal, the City of Atlanta appeals from the denial of its motion for summary judgment in a wrongful death action brought by the parents of Stephanie Kovalcik, who died in a nighttime car wreck at a newly reconfigured intersection in the City. The City contends that the trial court erred because (1) the City cannot be liable for any lighting defects in the absence of an underlying roadway defect, (2) the City had no duty to maintain the lighting, and (3) the undisputed facts show that the City had not assumed maintenance responsibility for the lighting. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of

summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The background facts in this case are largely undisputed and are the same as those recited in *Dept. of Transp. v. Kovalcik*,[2] in which this Court recently addressed an appeal by the Georgia Department of Transportation ("DOT") based on the same wreck.[3]

> [T]he DOT, the City of Atlanta, and the Buckhead Community Improvement District ("BCID") began planning a road improvement project to redesign a portion of Peachtree Road ("Project"), a State route within the City limits. In February 2004, the DOT and the City entered into an agreement to undertake certain improvements including the Project. The agreement stated that the City would ["]accomplish all of the design activities for the project in accordance with the DOT's Plan Development Process, the applicable guidelines of the American Association of State Highway and Transportation Officials, the DOT's Standard Specifications Construction of Roads and Bridges, the [DOT's]

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] __ Ga. App. __ (Case No. A14A0694; decided July 10, 2014).

[3] We recognize that the facts in *Dept. of Transp. v. Kovalcik* were reviewed under a different standard of review, but the relevant factual background is largely undisputed, so the factual recitation therein is helpful here.

Plan Presentation Guide, Project schedules, and applicable guidelines of the DOT.["]

The contract further provided that the DOT ["]shall review and has approval authority for all aspects of the Project provided however this review and approval does not relieve the City of its responsibilities under the terms of this agreement. The DOT will work with the [Federal Highway Administration] to obtain all needed approvals with information furnished by the City.["]

Pursuant to an agreement between the BCID and the City, the BCID retained URS Corporation to deliver construction plans that included road design, signage, pavement markings, curbs, traffic signals, and landscaping. URS prepared the plans and, through an iterative process of review and feedback, the DOT approved them.

In January 2006, the DOT awarded a construction contract to Infrasource Paving and Concrete Services, and contracted with Parsons Brinkerhoff Shuh & Jernigan ("PBSJ") to provide construction, engineering, and inspection services for the Project. . . .

Active construction ended [with a ribbon cutting ceremony] in October 2007, and a final inspection was performed in January 2008. On a rainy night in March 2008, Cameron Bridges approached the intersection in Stephanie's car with her as his passenger. The complaint alleges that Bridges was heading south on Peachtree Road, and, intending to turn left onto Piedmont Road, Bridges entered what he

3

believed to be the left-hand turn lane. Instead, the vehicle entered a short left-hand turn lane immediately preceding the Piedmont intersection so that drivers could turn left into a parking lot at the northeast corner of Peachtree and Piedmont. This shorter turn lane was bounded by a concrete divider, which allegedly caused the vehicle to roll when Bridges mistakenly drove into it. [Several newly installed street lights in the area were not illuminated on the night of the crash.]

Stephanie died of injuries she suffered in the crash, and the Kovalciks filed suit against the DOT, the City, BCID, URS, PBSJ, and others.[4]

Following discovery, the City moved for summary judgment, arguing that it was not involved with the design, construction, or inspection activities – all of which were conducted by various contractors according to the agreements between the City, BCID and DOT. The City also argued that the street lighting was not under the purview of the City at the time of the accident. The trial court, in a two-sentence order, denied the City's motion, concluding that "a jury should determine whether [the City] assumed, or should have assumed, responsibility for the streetlights at issue herein." The trial court certified its decision for immediate review; this Court then granted the City's application for interlocutory review.

---

[4] (Punctuation and footnote omitted.) Id. at __.

1. The City first argues that defective lighting cannot give rise to liability on the part of the City absent some underlying defect in the street. The City relies on *Roquemore v. City of Forsyth*,[5] which addressed a suit against a city by a pedestrian hit by a car at an intersection. In that case, the Court summarized the relevant law as follows:

> The law is well settled in this State that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and if it fails to do so, it is liable for damages for injuries sustained in consequence of such failure. But it is also undisputed that the decision whether to provide lighting on a particular city street is a discretionary function of a municipality. Such lighting is a discretionary act of the municipality, and for the exercise or failure to exercise such a power no right of action accrues. And it would seem that the discretion to install a system of lighting would include a discretion to discontinue it.
>
> In reconciling a city's duty to maintain safe streets with its discretion in providing lighting on those streets, the Supreme Court of Georgia has held that "the character of the light at a dangerous point in the street, or its absence, may be shown as a circumstance bearing on" the issue of whether a city has maintained a street in a reasonably safe condition, or whether it was negligent in that regard. *But the mere*

---

[5] 274 Ga. App. 420 (617 SE2d 644) (2005).

5

*absence of an ordinary street light at a given point will not constitute such negligence as to render the city liable if the city otherwise has performed its obligation to keep the streets safe and free from defects.* The [C]ourt explained that "neither the absence of lights nor defective lights is in itself negligence, but is only evidence on the principal question, whether, at the time and place where an injury occurred, the streets were in a reasonably safe condition." And Georgia courts have never held that the temporary failure of a street-light to burn at a point where there is no obstruction, excavation, or other extraordinary defect in the street, gives rise to any liability against a city or its agents.[6]

Based on the emphasized language, the City argues that it has no liability stemming from the mere absence of working street lights at the site of the crash. Therefore, the City asserts that the trial court erred by concluding that a jury could find that liability could flow from the City's responsibility for the lighting at the crash site.

This argument does not require reversal in light of the somewhat peculiar factual circumstances of this case. The evidence shows that the crash occurred at the site of a newly redesigned intersection with an unusual left-turn configuration. The regular left-turn-only lane was marked by overhead signage, but it was immediately preceded by a shorter, unsigned left-turn lane with a concrete divider extending into

---

[6] (Citations and punctuation omitted; emphasis supplied.) Id. at 422, quoting *Williams v. Mayor &c. of Washington*, 142 Ga. 281, 283 (1) (82 SE 656) (1914).

the path of the regular turn lanes and diverting traffic into a private parking lot. A driver traveling in the shortened turn lane would necessarily encounter the concrete divider unless he turned into the private lot. In light of the physical design of the curb and the traffic routing feature of the shortened turn lane, notice to drivers about lane designations was vital to safe passage through the intersection. In fact, the investigating officer observed damage indicating several other unrelated curb strikes at the newly constructed turn lane in the same location as the Kovalcik crash. He further observed that eight out of ten streetlights were out at the time of the crash, and the lack of lighting was a concern to him based the unusual design and the fact that it was dark and raining, and visibility was poor. Further, because of the City's role in the design and construction of the intersection, there is evidence that the City knew or should have known that the lighting was not yet operational.[7] Under these unusual circumstances, absence of lighting could be considered as evidence on the issue of whether, at the time and place of the crash, the newly constructed intersection was being maintained in a reasonably safe condition.[8]

---

[7] Compare *Roquemore*, 274 Ga. App. at 423 (no liability because no evidence of actual or constructive knowledge on the part of the city).

[8] Cf. *Hall v. City Council of Augusta*, 49 Ga. App. 77, 78 (3) (174 SE 172) (1934) ("evidence as to the character and position of lights at or near the scene of the

2. The City next takes issue with the wording of the trial court's conclusion, i.e., "that a jury should determine whether [the City] assumed, *or should have assumed*, responsibility for the streetlights at issue."[9] Essentially, the City argues that determining the extent of the City's duty to maintain the lights is a legal question and not a factual question for the jury. It is true that the existence of a duty is a legal question not for the factfinder,[10] but we do not read the trial court's order as inconsistent with this maxim. The trial court's ruling simply reserves for the jury the question whether the City, as a matter of fact, actually did assume responsibility for the lighting or whether the City failed to do what it agreed to do (with regard to the lighting) despite any argument that it was not legally required to. Therefore, we discern no error on this ground.

---

accident, or their absence therefrom, could be adduced as a circumstance tending to show whether or not the street was in a reasonably safe condition"). Compare *Roquemore*, 274 Ga. App. at 422 (noting "no evidence in the record of any defect, obstruction or other dangerous condition in the street where the accident occurred").

[9] (Emphasis supplied.)

[10] See, e.g., *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 586-587 (2) (748 SE2d 846) (2013) ("[A]t the summary judgment stage, keeping the legal question of duty distinct from the factual questions of foreseeability, breach, and causation is essential to ensure that the court does not inappropriately decide factual issues that should be submitted to the jury.").

3. Finally, the City argues that there is no evidence that the City did in fact assume responsibility for the lighting. But there is evidence that the City would assume responsibility for operating signals and lighting upon completion of construction, and there is evidence that the City considered the newly-designed intersection safe for public passage when it opened the intersection in October 2007 despite the lack of working lighting. Further, there is evidence that at the time of the wreck the lighting had been energized "for quite a while," and simply needed to be entered into the City's billing account with the power company. Accordingly, we discern no error in the trial court's ruling that a question remains as to whether the City, as a factual matter, did assume or should have assumed responsibility for the lighting at the intersection.

*Judgment affirmed. Miller and Dillard, JJ., concur.*