**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 16, 2024**

# In the Court of Appeals of Georgia

A24A0802, A24A0803. CITY OF MILTON v. CHANG et al.; and vice versa.

MARKLE, Judge.

In November 2016, Joshua Chang was killed in a single-car accident on Batesville Road in the City of Milton ("the City") when his car struck a concrete planter that was located on the shoulder. His parents sued the City for negligence and nuisance, and a jury found the City liable, awarding over $30 million in damages.[1] In Case No. A24A0802, the City appeals from the denial of its motions for judgment notwithstanding the verdict ("JNOV") and for new trial on the grounds that (1) it was entitled to sovereign immunity, and (2) the trial court erred by admitting testimony

---

[1] Chang's parents also sued two other entities that owned and operated the property adjacent to the planter, but they settled their claims with those defendants early in the litigation.

regarding interpretations of the applicable City ordinances. In Case No. A24A0803, the Changs cross-appeal from the trial court's failure to (1) apply pre-judgment interest to the jury's award, and (2) enter judgment nunc pro tunc to the date of the jury's verdict. For the reasons that follow, we affirm in Case No. A24A0802 and we vacate and remand with direction in Case No. A24A0803.

> [O]n appeal from the denial of a motion for a directed verdict or a motion for [JNOV], we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. And because the jurors are the sole and exclusive judges of the weight and credit given the evidence, we must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. Even so, we review questions of law de novo.

(Citations, punctuation, and emphasis omitted.) *Bristol Consulting Group v. D2 Property Group*, 366 Ga. App. 843, 849 (2) (884 SE2d 546) (2023).

So viewed, the record shows that, one evening in November 2016, college student Joshua Chang was driving back to his parents' house when his car left the paved portion of the roadway, slid more than 60 feet, and collided with a large

concrete planter on the shoulder of Batesville Road in the City. The impact caused the car to flip and land on top of the planter, killing Joshua. There was no evidence that Joshua was speeding or intoxicated at the time of the accident; nor was there evidence he was using his cell phone while driving. Instead, based on the physical evidence at the scene, an accident reconstructionist opined that it appeared that Joshua had pulled the steering wheel hard right, as if trying to avoid something in the road, causing the car to yaw sideways onto the shoulder before striking the planter.[2]

The planter sat on a part of the shoulder between two driveways that provided ingress and egress for an adjacent event facility. It is undisputed that the planter was located about six feet off the roadway, but within the right-of-way, as defined by City Ordinance § 48-653.

Chang's parents sued the City, alleging it was negligent and in breach of its ministerial duty to ensure the roadways were safe, and that the planter created a nuisance.[3] Prior to trial,[4] the City filed a motion in limine to exclude testimony from

_____

[2] A yaw is a sideways sliding movement, whereas a skid is forward motion in which the tires do not rotate.

[3] The Changs initially pled a claim for negligence per se for violations of the City's Ordinances, but they later withdrew that claim. To state a claim for negligence, the Changs had to show that the City breached a duty and that breach caused

City employees regarding their interpretations of the relevant City ordinances. Although the trial court initially granted the motion to exclude, it later revisited that decision and allowed the testimony.

The testimony at trial established that the planter was on the City's property and in the right-of-way, which the City was responsible for maintaining. Per its ordinances, the City was responsible for inspecting its roadways, identifying defects, and removing hazards, such as the planter. Specifically, several witnesses testified that the City should have noticed and removed the planter when it completed repair work to Batesville Road in 2012. Experts opined that the planter was a problem, and "the appropriate response" and "obvious choice" was to remove it. But the City had not conducted any safety inspections, and according to the City's own code enforcement officer, "oops, . . . how could we never notice" the existence of the planter.

_____

damages. See *Glover v. Ga. Power Co.*, 347 Ga. App. 372, 375 (1) (819 SE2d 660) (2018). That duty can be established by statute. Id. Relevant here, under OCGA § 32-4-93 (a), the City has a duty to keep its streets free from defects of which it had notice. See also *Mayor and Alderman of City of Savannah v. Herrera*, 343 Ga. App. 424, 428 (1) (808 SE2d 416) (2017).

[4] The City moved for summary judgment, arguing that it was entitled to sovereign immunity from suit under OCGA § 36-33-1 and the Georgia Constitution of 1983, Art IX, Sec. II, Para. IX. The trial court denied the motion, and this Court denied interlocutory review.

The jury found the City liable because it had maintained a defect and a nuisance. It awarded damages in the amount of thirty-five million dollars, which was reduced by seven percent for the amount of Joshua's comparative fault.

Before the trial court entered judgment, the Changs moved for pre-judgment interest under OCGA § 51-12-14 (a), noting that they had made a settlement demand by certified mail, which the City rejected, and they had obtained a judgment in excess of the amount of the demand. The trial court entered judgment reflecting the jury's verdict, but it did not award pre-judgment interest. The Changs later renewed their motion for pre-judgment interest, and requested the trial court enter judgment in the case nunc pro tunc to the date of the jury's verdict. The trial court did not rule on this motion.

The City moved for a new trial and for JNOV, raising the same arguments it now raises on appeal. The trial court denied both motions. Both the City and the Changs now appeal.

*Case No. A24A0802*

1. The City argues that the trial court erred by denying its motion for JNOV because (a) the negligence claim was barred by sovereign immunity; (b) if it was not

5

barred by immunity, the recovery was limited to the $2 million insurance policy limit; (c) the nuisance claim was barred by sovereign immunity; and (d) the plaintiffs failed to establish the planter was a nuisance. It further argues that the trial court erred by permitting witnesses to testify to their interpretation of the relevant City ordinances. We conclude the City waived its immunity and that any error in admitting the testimony was harmless.

(A) *Sovereign immunity*

"Municipalities are protected by sovereign immunity pursuant to Article IX, Section II, Paragraph IX of the Georgia Constitution unless that immunity is waived by the General Assembly or by the terms of the Constitution itself." (Citations and footnote omitted.) *Mayor & Alderman of City of Savannah v. Herrera*, 343 Ga. App. 424, 427 (1) (808 SE2d 416) (2017); see also OCGA § 36-33-1 (a) ("it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages."). "The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." *Ga. Dept. of Labor v. RTT Assoc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016). "Whether sovereign immunity has been waived

under the undisputed facts is a question of law, and we conduct a de novo review."

*Smith v. City of Roswell*, 361 Ga. App. 853, 856 (2) (864 SE2d 175) (2021).

The General Assembly has carved out two separate waivers of the municipality's sovereign immunity: First, a municipality can waive its immunity through the purchase of insurance under certain circumstances. OCGA § 36-33-1 (a); see also *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1), n. 2 (769 SE2d 320) (2015); *Smith*, 361 Ga. App. at 855 (2).

Second, municipal corporations can be liable for negligence in the performance of their ministerial duties.[5] OCGA § 36-33-1 (b); *Herrera*, 343 Ga. App. at 427-428 (1). And we have explained that "[o]ne such ministerial duty . . . is the duty of a municipality to maintain city streets in a reasonably safe condition for travel."

---

[5]     Ministerial functions . . . are recognized as those involving the exercise of some private franchise, or some franchise conferred upon the municipal corporation by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest.

(Citation and punctuation omitted.) *Mitchum*, 296 Ga. at 578 (2); see also *Gatto v. City of Statesboro*, 312 Ga. 164, 167 (1) (860 SE2d 713) (2021) (describing governmental and ministerial functions).

*Herrera*, 343 Ga. App. at 428 (1). The General Assembly, however, has limited any such liability by statute:

> A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

OCGA § 32-4-93 (a). "Thus, stated positively, municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." (Citation and punctuation omitted.) *Herrera*, 343 Ga. App. 428 (1); see also *Gatto v. City of Statesboro*, 312 Ga. 164, 167 (1), n. 4 (860 SE2d 713) (2021) ("Georgia courts have long held that the duty to maintain streets and sidewalks free from obstructions and other dangers is a ministerial duty.") (emphasis omitted).

(i) *Ministerial duty*

We begin with whether the City waived its sovereign immunity under the ministerial duty exception, and our analysis considers (a) whether the planter was a

defect in the road; and (b) whether the City had notice of it. See OCGA §§ 32-4-93 (a); 36-33-1 (b); *Herrera*, 343 Ga. App. at 428 (1).

(a) *Did the planter constitute a defect in the road*

For more than 100 years, the rule in Georgia has been: "[t]he municipality should not allow obstructions . . . to adjoin the traveled way which will render its use unsafe and dangerous. . . . Cities are liable for . . . negligently allowing obstructions likely to cause injury to be placed upon or near the line[.]" (Citations and punctuation omitted.) *City Council of Augusta v. Tharpe*, 113 Ga. 152, 155-56 (38 SE 389) (1901).

Here, there is no dispute that the planter was located on the shoulder and within the right-of-way on the City's property. Importantly, the term "road" is defined by statute as

> a highway, road, street, avenue, toll road, tollway, drive, detour, or other way that either is open to the public or has been acquired as right of way, and is intended to be used for enjoyment by the public and for the passage of vehicles in any county or municipality of Georgia, including but not limited to the following public rights, structures, sidewalks, facilities, and appurtenances incidental to the construction, maintenance, and enjoyment of such rights of way: (A) Surface, shoulders, and sides[.]

9

OCGA § 32-1-3 (24).[6]

In addition, the City's own municipal code defines right-of-way to include the shoulder. City of Milton Municipal Code § 48-653.[7] The City acknowledges that the planter was on the shoulder, in the right-of-way on a City-owned road. There was additional evidence that the shoulder was used for drivers in cases of emergency or in evasive maneuvers. Thus, the record demonstrates that the planter was in the road as that term is defined by statute. OCGA § 32-1-3 (24).

Turning to whether the planter was a defect, we have held that a defect in the street "include[s] objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares more

---

[6] We cannot accept the City's argument during oral argument that the planter was not in the road because it was not in an area intended to be used for vehicle travel. It is well-settled that "when interpreting a statute, all its words must be given due weight; we are forbidden to 'read out' any words in the statute unless a clear reason appears for doing so." (Citation and punctuation omitted.) *AgSouth Farm Credit v. Gowen Timber Co.*, 336 Ga. App. 581, 589 (2) (b) (i) (784 SE2d 913) (2016). And, we must avoid "a statutory construction that will render some of the statutory language mere surplusage[.]" *Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014). Reading the statute in this manner, we conclude that the planter was in the road as that term is defined by statute. OCGA § 32-1-3 (24).

[7] Interestingly, this definition appears in the portion of the municipal code, entitled "Trail Development Standards." But no one argues that the definition would be different elsewhere in the Code.

hazardous." (Citations omitted.) *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 530 (2) (307 SE2d 47) (1983) (whether power pole on curb area was a defect was question of fact for the jury where bus passenger got arm caught between bus window and pole and the bus remained on the road). And in such cases, we have repeatedly found that the City waived its immunity. See *Herrera*, 343 Ga. App. at 429-432 (1) (City waived its immunity where trees adjacent to street may have obstructed view and it was for the jury to decide if they were a defect); *DeWaters v. City of Atlanta*, 169 Ga. App. 41, 43-44 (1) (311 SE2d 232) (1983) (City not immune from suit involving sewer grate in road that injured bicyclist); *Barnum v. Martin*, 135 Ga. App. 712, 716-717 (3) (219 SE2d 341) (1975) (road with improper elevation and sharp curve was defective and City had obligation to repair it or provide warning), disapproved of on other grounds by *Dept. of Public Safety v. Ragsdale*, 308 Ga. 210, 214, n.7 (839 SE2d 541) (2020); *City of Milledgeville v. Holloway*, 32 Ga. App. 734 (124 SE 802) (1924) (City breached ministerial duty to keep streets in safe condition where driver was forced to turn onto sidestreet to avoid obstruction in road, which resulted in driver skidding into ditch not protected by guard rail).

Here, the testimony established that the planter was located on the City's property in the right-of-way and on the shoulder. Additional testimony established that the shoulder was used to give drivers a place to maneuver if they needed to pull off the road or to perform an evasive maneuver, and that the presence of the planter on the shoulder was a hazard for vehicles leaving the travel lanes. There was additional testimony that the City should have discovered the existence of the planter and removed it. Given these facts, it was for the jury to determine if the planter constituted a defect. *Herrera*, 343 Ga. App. at 430 (1).[8] And, as noted, there was evidence from which the jury could find that the planter was an "object[] adjacent to" the roadway,

---

[8] The Changs contend that *Herrera* was limited to consideration of defects outside the road, similar to *Smith*. See *Chatham Area Transit Auth. v. Brantley*, 353 Ga. App. 197, 201 (1) (834 SE2d 593) (2019)("at no point in *Herrera* did we discuss the phrase 'municipal street system' or its meaning. Our conclusion in that case, as it clearly states, merely addresses what may be considered a defect based on its location in relation to the public road, not whether the public road is part of the municipal street system."). This description in *Brantley* is too narrow a reading of *Herrera*, which was concerned with what constituted a "defect" on the road. See *Herrera*, 343 Ga. App. at 428-430 (1) ("The question then turns on what constitutes a defect in the public roads . . . and whether objects adjacent to the road that obstruct the view of travellers on the road are considered 'defects in the public roads.'") (citation omitted).

which "renders the use of these thoroughfares more hazardous." (Citation omitted.) *Kicklighter*, 167 Ga. App. at 530 (2); see also OCGA § 32-4-93 (a).

We are unpersuaded by the City's reliance on *Smith v. City of Roswell*, 361 Ga. App. 853 (864 SE2d 175) (2021), and find that case distinguishable. In *Smith*, while driving under the influence, a father drove his car off the road and struck two mailboxes, killing himself and his daughter. Id. at 853. The child's mother sued the City of Roswell, arguing that the failure to remove the mailboxes was a ministerial duty. Id. The trial court granted Roswell's motion to dismiss on sovereign immunity grounds. Id. On appeal, this Court considered whether the mailboxes constituted defects in the road, noting that it was undisputed that the mailboxes were not in or on the road, as the plaintiff had pled that the car "left the roadway" before striking them. Id. at 858-859 (2) (b). Given that fact, we explained,

> [w]here a plaintiff alleges that the defective condition which caused injury was located on a part of the city's street and sidewalk system, *there must be some evidence that the defect was located in an area accepted by the city, either expressly or by implication, for use as a street or sidewalk, before the city can be charged with liability for negligently failing to maintain the area in a reasonably safe condition.*

(Citation omitted; emphasis supplied.) Id. at 858 (2) (b).

13

The analysis in *Smith* did not address whether an object *in the road* constituted a defect such that the City had a ministerial duty to remove it. "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (Citation and punctuation omitted.) *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 300 Ga. 223, 231 (2) (d) (794 SE2d 85) (2016). Moreover, various City employees testified that the planter was on the shoulder, in the right-of-way, on a City-owned street. Thus, we do not find *Smith* on point.[9]

(b) *Whether the City had notice of the defect in the road*

As we have explained, notice can be actual or constructive. *Herrera*, 343 Ga. App. at 428 (1).

> Constructive notice of a defect may be imputed through the knowledge of the city's employees or agents, or may be shown by testimony as to how long the defect existed prior to the injury, objective evidence that the defect existed over time, or evidence that others were

---

[9] Likewise, *City of Vidalia v. Brown*, 237 Ga. App. 831, 832-834 (1) (516 SE2d 851) (1999) (physical precedent only), on which the City relies, is also distinguishable because that case did not involve a hazard or defect *in* the roadway where vehicles could travel. See also *City of Alpharetta v. Hamby*, 352 Ga. App. 511, 515-516 (1) (b) (ii) (835 SE2d 366) (2019).

injured as a result of the same condition over a period of years. The question of constructive notice ordinarily is for the jury, except in the absence of any evidence of constructive notice that could create a fact question, and in such an instance, the issue of negligence is a matter of law. Further, the length of time a defect must exist in order for an inference of notice to arise is ordinarily a jury question.

(Citation and punctuation omitted.) *Herrera*, 343 Ga. App. at 431 (1); see also *Tucker v. City of Thomasville*, 367 Ga. App. 700, 702 (888 SE2d 265) (2023); *City of Suwanee v. Padgett*, 364 Ga. App. 34, 37-38 (3) (b) (873 SE2d 712) (2022) (Google street view photos taken years before injury was sufficient to raise jury question of constructive notice); but see *City of Brunswick v. Smith*, 350 Ga. App. 501, 504-505 (829 SE2d 781) (2019) (Google street view photograph of defect prior to plaintiff's accident did not create jury question in absence of other evidence to show defect had existed over time).

Here, there was testimony that the planter pre-dated the City's incorporation in 2006, that the City performed repair work on the road in 2012, and the City could have noticed and removed the planter then. The City's representative also acknowledged that, in surveys completed prior to the accident, the planter is visible. As such, there was sufficient evidence from which the jury could conclude the City

15

had notice. See *Herrera*, 343 Ga. App. at 431-432 (1) (evidence of prior accidents and City worker's observation of obstruction created jury question as to notice of nuisance).

(ii) *Insurance policy*

The City also mentions briefly that any waiver of immunity is limited to the extent of the insurance policy. But ministerial duty and insurance are two separate and distinct waivers of immunity. Having concluded that the City waived its immunity based on its ministerial duty, we need not consider whether it waived immunity by purchasing insurance. OCGA § 36-33-1 (a), (b).

(B) *Nuisance*[10]

> If a municipality is to be held liable under a theory of maintaining a nuisance, there must be the maintenance of a dangerous condition on a continuous or regular basis over a period of time in which no action or inadequate action is taken to correct the condition after knowledge

---

[10] The City asks us to overrule two Supreme Court of Georgia cases holding that there is a nuisance "exception" to sovereign immunity. It goes without saying that this Court cannot "overrule" decisions of our Supreme Court. See *Etkind v. Suarez*, 234 Ga. App. 108 (505 SE2d 831) (1998) ("[T]his court has no authority to overrule or modify a decision of the Supreme Court of Georgia as the decisions of the Supreme Court of Georgia shall bind all other courts as precedents.") (citations and punctuation omitted); see also *McCulloch v. State*, 357 Ga. App. 67, 69 (1), n. 4 (849 SE2d 795) (2020).

thereof. If the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act. The municipality must either have knowledge or be chargeable with notice of the dangerous condition[.]

(Citations, punctuation, and emphasis omitted.) *Kicklighter*, 167 Ga. App. at 531 (3); see also *City of Alpharetta v. Vlass*, 360 Ga. App. 432, 435-436 (1) (861 SE2d 249) (2021); *Heller v. City of Atlanta*, 290 Ga. App. 345, 350 (2) (659 SE2d 617) (2008); OCGA § 41-1-1 ("A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance.").[11]

In light of our conclusion in Division 1 (A) (i) that the City was not entitled to immunity on the negligence claim, we need not address the City's argument that the Changs failed to establish a nuisance. Notably, the jury found the City liable for both

---

[11] The Changs contend that the City has waived any argument that the planter constituted a private nuisance (as opposed to a public one) because it did not raise the argument in its motion for directed verdict. See generally, *Avion Systems v. Bellomo*, 338 Ga. App. 141, 144 (2) (789 SE2d 374) (2016) (party cannot raise issue in JNOV that it did not raise in motion for directed verdict). However, the City's main argument is that there was no waiver of sovereign immunity for nuisance claims, and the Changs failed to establish the elements of nuisance. And, the arguments on appeal are the same as those raised in the motions for directed verdict and JNOV.

negligence and nuisance, and the verdict form did not allocate the damages award to either theory specifically. See *City of Lawrenceville v. Alford*, 366 Ga. App. 226, 229 (881 SE2d 474) (2022) ("In the absence of a verdict form requiring more specificity, the method by which a jury reaches a particular verdict is not a matter of which this Court can take judicial cognizance. If the City had wanted the jury to explain the basis for the damages award, it should have objected to the verdict form. It did not do so and thus has waived any objection in this regard.") (citations and punctuation omitted); *Ga. Clinic v. Stout*, 323 Ga. App. 487, 492 (2) (747 SE2d 83) (2013) (where the verdict form did not indicate which of the two grounds of liability the jury found, this Court would not question the verdict).

2. The City next argues that the trial court erred by permitting the witnesses to testify to their interpretations of the City's ordinances because their opinions were irrelevant, and witnesses are not permitted to testify to statutory interpretation. The Changs respond that the City waived this issue by eliciting the testimony during its own examination of the witnesses.[12] We conclude that any error was harmless.

---

[12] The City requested a continuing objection to such testimony, and the trial court agreed.

We review a trial court's admission of evidence for abuse of discretion. *MyFamilyDoc v. Johnston*, 366 Ga. App. 459, 464 (2) (883 SE2d 404) (2023).

> However, to be reversible error, it is not enough that the trial court erred; the plaintiffs also must show that the error had an effect on the outcome of the proceedings. Erroneous evidentiary rulings are subject to the harmless error doctrine, meaning we may not reverse a judgment because of such an error unless refusal to take such action appears to the court inconsistent with substantial justice. When we consider whether an error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Ross-Stubblefield v. Weakland*, 359 Ga. App. 523, 527 (859 SE2d 502) (2021); see also OCGA 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

Pretermitting whether the City waived the error, we conclude that any error in the admission of this testimony was harmless.[13] *Ross-Stubblefield*, 359 Ga. App. at

---

[13] In arguing that this testimony was permissible, the Changs incorrectly focus on whether the witnesses testified to the ultimate issue; but the City argues that the witnesses improperly gave opinions on statutory interpretation. Although witnesses may give testimony as to the former, any testimony to the latter is clearly improper. See *Fireman's Fund Ins. Co. v. Holder Constr. Group, LLC*, 362 Ga. App. 367, 374 (1) (b) (868 SE2d 485) (2022); see also *United States v. F. E. B. Corp.*, 52 F 4th 916, 932

526-527; see also *Beaubrun v. State*, 363 Ga. App. 798, 799 (2) (872 SE2d 776) (2022). Importantly, there was no dispute that the planter was in the roadway as that term is defined by the state statute. The trial court instructed the jury that "a City has a duty to maintain the public roads of its municipal street system in a reasonably safe condition for traffic. A City does not have a duty to keep an area outside the public roads safe from defects when the defects do not . . . impede travel on the public road."

Reviewing the evidence de novo, and viewing it as a reasonable juror would, we conclude that the fact that the witnesses may have opined whether the planter was a hazard that had to be removed under the ordinances had no impact on the jury's verdict. Given the statutory definition of roadway, the City employees' acknowledgment that they should have noticed and removed the planter, and the other evidence regarding the vehicle use of the shoulder, such testimony did not affect the outcome of the trial. Accordingly, the admission of this testimony was harmless. *Ross-Stubblefield*, 359 Ga. App. at 526-527.

*Case No. A24A0803*

---

(IV) (B) (11th Cir. 2022) ("statutory interpretation is a legal question for a judge, not a factual question for the trier of fact. . . While expert witnesses may offer opinions on an 'ultimate issue' in a case, they may not offer 'legal conclusions.'") (citations and punctuation omitted).

3. The Changs cross-appeal from the trial court's failure to award pre-judgment interest and to enter its final judgment nunc pro tunc to the date of the jury's verdict. We agree with both arguments.

(a) *Pre-judgment interest*.

Under OCGA § 51-12-14, known as the "Unliquidated Damages Interest Act,"

> [w]here a claimant has given written notice by registered or certified mail or statutory overnight delivery to a person against whom claim is made of a demand for an amount of unliquidated damages in a tort action and the person against whom such claim is made fails to pay such amount within 30 days from the mailing or delivering of the notice, the claimant *shall* be entitled to receive interest on the amount demanded if, upon trial of the case in which the claim is made, the judgment is for an amount not less than the amount demanded[.]

(Emphasis supplied.) OCGA § 51-12-14 (a), (e). When a party is entitled to pre-judgment interest under this provision, the amount "shall begin to run from the thirtieth day following the date of the mailing or delivering of the written notice until

21

the date of judgment."[14] OCGA § 51-12-14 (c). The question of pre-judgment interest is for the court rather than the jury:

> Evidence or discussion of interest on liquidated damages, as well as evidence of the offer, shall not be submitted to the jury. Interest *shall be made a part of the judgment* upon presentation of evidence to the satisfaction of the court that this Code section has been complied with and that the verdict of the jury or the award by the judge trying the case without a jury is equal to or exceeds the amount claimed in the notice.

(Emphasis supplied.) OCGA § 51-12-14 (d).

The Changs argue that they are entitled to pre-judgment interest from March 17, 2023, which was 30 days after the date of the last settlement offer, until the date of the jury's verdict on June 15, 2023. We must look to the statute to determine whether the trial court was required to award pre-judgment interest.

> When interpreting provisions of a statute, such as [OCGA § 51-12-14], we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the

---

[14] The Changs made seven offers to settle the case, all of which the City rejected. The amount of these offers ranged from $1.75 million early in the case, to $10 million just before trial. As noted, the jury returned a verdict in the amount of $35 million.

context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation omitted.) *Carr v. Yim*, 369 Ga. App. 389, 392 (893 SE2d 801) (2023).

The plain language of the statute uses the mandatory word "shall." See *In re Blake*, 370 Ga. App. 610, 614 (1) (898 SE2d 638) (2024); *Baylis v. Daryani*, 294 Ga. App. 729, 730 (1) (669 SE2d 674) (2008) ("The general rule is that 'shall' is recognized as a command, and is mandatory."). Here, the Changs satisfied all of the pre-requisites for seeking pre-judgment interest. Thus, the trial court erred by implicitly denying an award of pre-judgment interest, and we vacate the entry of judgment, and remand the case with direction to award pre-judgment interest.

(b) *Nunc pro tunc*

The Changs then urge this Court to instruct the trial court on remand to enter judgment nunc pro tunc to the date of the jury's verdict under *Taylor v. Devereux Foundation*, 316 Ga. 44, 95-96 (IX) (885 SE2d 671) (2023). Here, the record reflects

23

that the trial court did not enter its judgment on the verdict until 12 days after the jury's verdict.

"A trial court may enter a judgment nunc pro tunc to perfect the record and properly reflect when an order or judgment should have been entered." (Citation and punctuation omitted.) *Taylor*, 316 Ga. at 95 (IX).

> The general rule is that nunc pro tunc entries are proper to correct clerical errors but not judicial errors. A clerical error involves an error or mistake made by a clerk or other judicial or ministerial officer in writing or keeping records; it does not include an error made by the court itself. To be clerical in nature it must be one which is not the result of judicial reasoning or determination.

(Citation omitted.) *K/C Ice, LLC v. Connell*, 352 Ga. App. 376, 379 (2) (835 SE2d 11) (2019).

In other words,

> [a] court's power to amend nunc pro tunc is the power to correct inadvertent errors or omissions in the record to reflect the truth of what happened; it does not include the power to supply judicial omissions so as to include what a court might or should have decided, but did not actually so decide. Accordingly, the purpose of entering an order nunc pro tunc is to record some previously unrecorded action actually taken

or judgment actually rendered. It may not be used to supply an order not yet made by the court.

(Citations and punctuation omitted.) *Citizens for Ethics in Govt. v. Atlanta Dev. Auth.*, 303 Ga. App. 724, 734 (2) (694 SE2d 680) (2010).

As our Supreme Court's decision in *Taylor* dictates, the trial court should have entered judgment nunc pro tunc to the date of the jury's verdict. 316 Ga. at 95-96 (IX); see also *Wingate Land & Dev. v. Robert C. Walker, Inc.*, 252 Ga. App. 818, 822 (5) (558 SE2d 13) (2001) (trial court had authority to enter judgment nunc pro tunc even though final judgment was entered almost a year after the jury's verdict). Accordingly, on remand, the trial court is directed to enter judgment nunc pro tunc to the date of the jury's verdict.

*Judgment affirmed in Case No. A24A0802. Judgment vacated and case remanded with direction in Case No. A24A0803. Miller, P. J., and Land, J., concur.*