### A03A1296. RIGGINS v. CITY OF ST. MARYS.
(589 SE2d 691)

SMITH, Chief Judge.

Mary Riggins brought suit against the City of St. Marys[1] to recover damages for injuries incurred by her son and ward, Caleb Riggins, who was seriously injured in an automobile collision in the city. She alleged in her complaint that the intersection at which the collision occurred was a dangerous nuisance that caused Caleb's injuries. Riggins amended the complaint to add a negligence claim based upon the city's failure to install a traffic light at the intersection. The city moved for summary judgment, which the trial court granted, and Riggins appeals. We agree with the trial court that the negligence claim cannot stand because whether to install a traffic signal at the intersection was a discretionary act, entitling the city to sovereign immunity. We agree with Riggins, however, that the trial court erred in finding as a matter of law that the city's acts or omissions regarding the intersection could not have been a proximate cause of Caleb's injuries. We conclude that summary judgment in favor of the city on Riggins's nuisance claim was error. We therefore affirm in part and reverse in part the judgment below.

The record shows that the collision occurred at the intersection of Kings Bay and Colerain Roads in the city. Kings Bay Road is a four-lane road divided by a median; it leads to the Kings Bay submarine facility and is heavily traveled. Colerain Road is a two-lane road

---

[1] Riggins sued other governmental entities as well, but she later dismissed these parties. Only the city remains as a party to this appeal.

connecting Interstate 95 to St. Marys. The intersection was originally outside the city limits, but in 1985, the city annexed the intersection and surrounding land. Because of increasing traffic and a concomitant increase in accidents involving failure to yield the right of way, the city attempted to control traffic at the intersection in 1988 by installing a blinking light. The light blinked yellow on Kings Bay Road and red on Colerain Road. The frequency of accidents thereafter increased 70 percent.

In response to a request from the Navy for additional traffic control devices, the city requested that the Georgia Department of Transportation (the DOT) take over the intersection. The DOT declined the city's request but did conduct a study of the intersection, finding that the increase in accidents was caused by drivers failing to pay proper heed to the blinking signal and "pulling into the path of approaching vehicles." The DOT also found that the turn arrows and stop lines on the roads' surfaces were worn and needed replacement and that overgrown vegetation in the median area obscured drivers' visibility. It recommended installation of a traffic light to replace the blinking light.

Thereafter, the city's police chief informed the city manager and the city council that the intersection was "already one of the most dangerous and deadly intersections in the county" and that "full signalization, enhanced traffic control, and other intersection improvements" were needed, especially because a new high school was scheduled to open shortly on Colerain Road. Shortly after the new high school opened in August 1994, the police chief reported to the city manager that an accident with injuries had occurred at the intersection, which was "[n]o surprise[ ]."

About this time, the city agreed with Camden County to propose a Special Purpose Local Option Sales Tax (SPLOST), which would be presented to the voters of the county at the November 1994 election. The governing statute, OCGA § 48-8-111, requires identification of the projects for which the tax revenue will be spent, and the first project listed by the city was installation of a traffic signal at the intersection of Kings Bay and Colerain Roads. The SPLOST was approved by the voters, and the tax went into effect on January 1, 1995. The city began collecting revenue in March 1995.

On March 2, 1995, the police chief again requested that the city council replace the blinking light with a traffic signal. Instead, in November 1995 the city submitted another request to the DOT, again asking that it take over the intersection and install a traffic signal. This request fared no better than the first. On August 12, 1996, a city councilman moved that the city proceed with installing a traffic light at the intersection. The motion was approved on August 26, 1996, but the project was not begun until January 13, 1997. The

installation was completed in less than two weeks, almost four years after the Navy's request and three and one-half years after it was first requested by the city's police chief.

In November 20, 1996, some two months before the blinking light was replaced with a traffic signal, seventeen-year-old high school senior Caleb Riggins was driving home from school in his father's car. His neighbor, Andrew Sylve, was a passenger. They entered Colerain Road from the high school, and as they approached its intersection with Kings Bay Road, Caleb stopped at the blinking red light. He then proceeded into the intersection, where his car was struck squarely on the driver's side door by a one-ton truck driven by Robert Connell, driving south on Kings Bay Road.

Connell testified on his deposition that he was driving at about the speed limit, which was 55 mph, and that he did not see Caleb enter the intersection until "two seconds" before impact, when it was too late to stop. Several eyewitnesses to the collision gave deposition testimony, as did Connell, Caleb, and Sylve. Some conflicts exist in their deposition testimony, particularly with regard to whether the sight line of either driver was blocked by another vehicle.[2] No dispute exists, however, that Caleb suffered severe injuries, including damage to his spinal cord, numerous fractured bones, and permanent brain damage. He is quadriplegic and will need care and medical attention for the remainder of his life.

1. Riggins contends in several enumerations of error that the trial court erred in granting summary judgment to the city on her nuisance claim. She argues that the city did not carry its burden of piercing a material allegation of the complaint, that evidence showed that the collision was a foreseeable consequence of the city's maintenance of a dangerous condition at the intersection, and that the drivers' negligence was not an intervening proximate cause of the collision. We agree.

(a) To be awarded summary judgment, a defendant/movant must show an absence of evidence to support at least one essential element of the plaintiff's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Riggins alleged in her nuisance claim that the poorly signaled intersection of Kings Bay and Colerain Roads was dangerous, that its maintenance by the city even after many accidents occurred

---

[2] For instance, Connell testified on his deposition that a large truck stopped in the through lane on Colerain Road blocked his view of Caleb's car, but neither Caleb nor Sylve mentioned such a truck. Sylve testified that a truck waiting to make a right turn from Kings Bay Road onto Colerain Road blocked Caleb's view of traffic on Kings Bay Road, but Warren Bennett, a motorist whose Cadillac was parallel to Connell's traveling south on Kings Bay Road, was preparing to turn right onto Colerain Road. He testified that no other vehicle was in front of his on Kings Bay Road. Caleb testified that no traffic was stopped on Kings Bay Road.

there amounted to a nuisance, and that the dangerous intersection itself was at least a contributing cause of Caleb's injuries. She argues that these allegations, if supported by evidence, would authorize a verdict against the city. See *City of Social Circle v. Sims*, 228 Ga. App. 582, 584 (3) (492 SE2d 240) (1997). Riggins argues that the city's motion for summary judgment did not address, much less refute, these allegations. "Nothing in *Lau's Corp.* places a burden on a plaintiff to respond to issues which are not raised in the motion for summary judgment." (Citation and footnote omitted.) *Harper v. City of East Point*, 237 Ga. App. 375, 376 (1) (515 SE2d 623) (1999). The city does not dispute the fact that it did not address Riggins's allegations regarding the nuisance claim. It asserts, however, that proximate causation is an essential element of even a nuisance claim and that Riggins has not shown proximate causation, making it unnecessary for the city to address directly her claim that the intersection constituted a nuisance.

The city properly points out that "[t]o establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. Conversely, no matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable." (Citations and punctuation omitted.) *Bacon v. Mayor &c. of Savannah*, 241 Ga. App. 211, 213 (525 SE2d 115) (1999). The city relies on *Bacon* and also on *City Council of Augusta v. Booker*, 229 Ga. App. 566 (494 SE2d 374) (1997), in support of its argument that proximate cause was not shown here.

In both *Bacon* and *Booker*, summary judgment was granted to municipalities sued on theories of nuisance stemming from defective or dangerous conditions on streets. In *Booker*, a five-year-old child riding a bicycle was seriously injured when struck by a motor vehicle at a busy intersection that was alleged to be a nuisance either because overgrown vegetation blocked the view of oncoming cars or because a power pole obstructed the view of the stop sign. Id. at 567. In *Bacon*, a six-year-old child ran into the street and was struck by a passing car, and the complaint alleged that the city had maintained a nuisance when it failed to remove several large trees along the street that prevented the child from seeing the car as she ran into the street. But in both cases, evidence showed that whether or not the city was negligent, the children ignored traffic laws of which they were aware when they ran or cycled into the street. In both cases, therefore, it was undisputed that the children's own negligence was clearly the proximate cause of their injuries.

Here, in contrast, no evidence in the record shows that Caleb was negligent. Indeed, the record shows without dispute that he heeded the traffic control signal that was present. He came to a com-

plete stop at the blinking red light and waited for traffic on Kings Bay Road to clear before entering the intersection. Nor does the record show without dispute that Connell was negligent. He was obeying the speed limit and braked when he saw Caleb's car, but it was too late to avoid the collision. It was therefore entirely possible that the city's maintenance of a dangerous condition at the intersection contributed to the collision.

"In order to pierce allegations of material fact contained in the plaintiff's petition, the evidence offered by defendant on motion for summary judgment must unequivocally refute those allegations and must clearly show what is the truth of the matter alleged." (Citation and punctuation omitted.) *Lamb v. Ga.-Pacific Corp.*, 194 Ga. App. 848, 849 (2) (392 SE2d 307) (1990). Here, as in *Lamb*, the defendant simply gave another possible cause for the collision; it did not refute the plaintiff's allegation that the defendant's act or omission had been a contributing cause. Summary judgment therefore was not authorized. See *Dunn v. Reliable Tractor*, 248 Ga. App. 258, 261 (545 SE2d 695) (2001).

(b) Moreover, unlike either *Booker*, supra, or *Bacon*, supra, some evidence showed that the city was aware of a dangerous condition at the intersection and that it failed to correct it for an unreasonably lengthy time, which may have constituted a nuisance.

> The Supreme Court has set out three guidelines to define a nuisance for which a city may be held liable. First, the defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. Second, the act must be of some duration, and the maintenance of the act or defect must be continuous or regularly repetitious. Third, the city must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.

(Footnote omitted.) *Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 727 (2) (548 SE2d 368) (2001). Evidence in the record shows that the city's police chief repeatedly warned the city of the extreme danger of the intersection, calling it "one of the most dangerous and deadly . . . in the county." The police chief, the Navy, and the DOT all recommended that a traffic signal be installed because of the increasing volume of traffic. The city initiated a SPLOST to cover the cost of installing a traffic signal at the intersection, but even after the tax referendum passed and the city had collected sufficient funds to cover it, the city further delayed installation by seeking to have the State pay for the project. This evidence at least arguably satisfies all three guidelines set out in *Thompson*.

(c) The trial court found that the negligence of the drivers involved was the intervening proximate cause of Caleb's injuries. It may well be that evidence could be produced at trial showing that one or the other of the drivers should not have proceeded through the intersection at that time. But even so, any such "negligence" on their part should certainly have been foreseen by the city given the many past collisions at this intersection and the lack of proper guidance given to drivers by the signals installed regarding when they might safely proceed through the intersection. It is well established that

> a causal connection between an original act of negligence and injury to another is not broken by the intervening act of a third person, if the nature of such intervening act was such that it could reasonably have been . . . foreseen by the original wrong-doer. Thus, if the intervening cause is . . . one which the defendant has reason to anticipate under the particular circumstances, the defendant may be negligent, among other reasons, because of failing to guard against it; or the defendant may be negligent only for that reason. And the risk created by the defendant may include the intervention of the foreseeable negligence of others.

(Citations, punctuation and emphasis omitted.) *Wade v. Polytech Indus.*, 202 Ga. App. 18, 22-23 (3) (413 SE2d 468) (1991). Accord *Williamson v. Abellera*, 245 Ga. App. 312, 315 (537 SE2d 130) (2000), aff'd in pertinent part, *Abellera v. Williamson*, 274 Ga. 324, 326 (1) (553 SE2d 806) (2001); *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 569 (499 SE2d 722) (1998). As we have determined, because the city was well aware of the dangers posed by the inadequate traffic signals at the intersection, the city clearly could have foreseen that drivers would make errors in judgment regarding if and when to proceed through the intersection. The trial court therefore erred in determining that the negligence of the drivers was an intervening proximate cause of the collision absolving the city from any responsibility for maintaining a nuisance.

In general, causation is a jury issue. It should not be determined by the trial court as a matter of law except in plain and undisputed situations. *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 124-125 (460 SE2d 824) (1995). This was not such a case, as several factors *may* have contributed to the collision, including the inadequate traffic control at the intersection. Summary judgment in favor of the city on Riggins's nuisance claim was error and must be reversed.

2. Under a nuisance claim, the nature of a city's act is irrelevant, because a municipality may be liable for maintaining a nuisance regardless of whether the act or omission creating the nuisance was ministerial or discretionary in nature. *City of Social Circle*, supra at 583 (1). But we must reach this question to determine whether the city is immune from suit with respect to Riggins's negligence claim.

> The Georgia Constitution provides that the General Assembly may waive the immunity of counties, municipalities, and school districts by statute. OCGA § 36-33-1 states that a municipal corporation shall not waive its immunity by purchasing liability insurance, except as provided in Code Section 33-24-51. OCGA § 33-24-51 gives cities and counties the discretion to purchase liability insurance to cover damages arising from the use of any motor vehicle, providing a limited waiver of their governmental immunity to the amount of the insurance purchased.

(Footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

Generally, a city's decision regarding whether to install a particular traffic control device at a particular location is discretionary, which renders the city immune from liability for its failure to act, "in the absence of a law or ordinance requiring the city to perform that act. See OCGA § 36-33-2. [Cits.]" *McKinley v. City of Cartersville*, 232 Ga. App. 659, 660 (1) (503 SE2d 559) (1998).[3] Riggins maintains that the passage of the SPLOST referendum listing a traffic signal at the intersection was just such a "law or ordinance requiring the city to perform" within the meaning of OCGA § 36-33-2 and that the trial court erred in finding that it did not. She argues that once the referendum passed, the city had a ministerial duty to install the light within a reasonable time.

In support of this argument, Riggins relies upon the Supreme Court's decision in *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996). But that case involved the DOT, not a municipality, and a different statute governed. The Tort Claims Act itself defines discretionary functions, and the "key" to the Supreme Court's decision

---

[3] In *McKinley*, the plaintiff, who was injured in a vehicular collision and brought suit against the city in negligence, also claimed the city had maintained a nuisance by failing to erect stop signs in both directions at the intersection. The trial court's rejection of the nuisance claim was affirmed by this court because of facts unique to that case: the collision was not caused by the absence of a four-way stop sign, as alleged by the plaintiff, but by an unknown person's turning the stop sign to face the wrong direction, a fact of which the city was unaware. Id. at 660.

in *Brown* was the definition, which created a distinction between "design and operational decisions" on the one hand, and "policy decisions" on the other. Id. at 7. The Tort Claims Act, however, does not control the result in this case; the city is not a State actor. Contrary to Riggins's argument, therefore, the city is *not* "under the same obligation as" the DOT.

Nor did passage of the SPLOST referendum create a mandatory time frame for completing the projects listed or require that the projects be completed in the same order in which they were listed. The city was obligated by the SPLOST budget to complete all the projects it listed, unless they became unfeasible. But it still retained discretion with regard to the order of the projects and also could make adjustments to them, even when operating within the context of a SPLOST project. *Dickey v. Storey*, 262 Ga. 452, 455-456 (3) (423 SE2d 650) (1992). The trial court properly concluded that the SPLOST referendum did not create a duty to install a traffic light at the intersection before completing other SPLOST projects and that the city was immune from liability for its discretionary decision as to when to install the light, to the extent not covered by liability insurance.

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Miller, J., concur.*

Decided November 13, 2003 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Fletcher Farrington*, for appellant.

*Whelchel, Brown, Readdick & Bumgartner, Terry L. Readdick*, for appellee.