**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A0649. MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH v. HERRERA et al.

McMILLIAN, Judge.

Lisa Nicolle Muse suffered incapacitating injuries when the car she was driving was struck as she was attempting to make a left hand turn at the intersection of White Bluff Road and Lee Boulevard in Savannah, Georgia. Ann J. Herrera, as conservator for Muse, and Gloria Fay Muse, as the guardian of Muse, ("Plaintiffs") filed suit against, inter alios, the Mayor and Aldermen of the City of Savannah (the "City"),[1]

---

[1] At the time of the accident, the other driver, Officer Judd West, was employed by Garden City, Georgia but was on loan to Chatham County under the terms of a County-City agreement creating a task force related to drug enforcement activities. Plaintiffs named Garden City and Chatham County as defendants but not West, and in a previous appeal we found Garden City was entitled to summary judgment under the borrowed servant rule. *Garden City v. Herrera*, 329 Ga. App. 756, 761 (1) (766 SE2d 150) (2014).

contending that the City acted negligently in locating the painted stop bar at the intersection and acted negligently and created a nuisance by allowing the line of sight of motorists entering the intersection to be obscured by two large trees, one of which was located on the City's right of way.[2] The City moved for summary judgment, contending that the negligence claims were barred by sovereign immunity; the acts alleged did not rise to the level of nuisance; the City's actions or inactions were not the proximate cause of the accident; and the claims were barred by the doctrine of avoidable consequences.[3] The trial court granted the City's motion as to Plaintiffs' claim based on the allegedly negligent placement of the stop bar, but denied the City's motion to the extent Plaintiffs' negligence and nuisance claims were based on the obstruction in line of sight caused by the tree. The trial court included in its order a certificate of immediate review, and the City sought interlocutory review from this Court, which we granted.

---

[2] The other tree was located on private property. Plaintiffs also sued that landowner, but those claims were dismissed with prejudice.

[3] The City also sought dismissal of Plaintiffs' claim for punitive damages. The trial court granted the City's motion as to that claim, and Plaintiffs have not challenged that ruling on appeal.

2

We first set out the circumstances surrounding the accident.[4] Lee Boulevard is a two lane public road that generally runs east to west, and White Bluff Road is a four lane road with two northbound and two southbound lanes divided by a median. Lee Boulevard and White Bluff Road intersect at several points, and the intersection where the accident occurred is on the westerly end where access from Lee Boulevard onto White Bluff Road is controlled by a stop sign at a three-way "T" intersection (the "Intersection"). Drivers on Lee Boulevard attempting to access the southbound lanes of White Bluff Road are required to stop at the stop sign, traverse the two northbound lanes of White Bluff Road, and then turn left.

Two large oak trees, one of which is on the City's right of way, were situated to the left of the driver along the side of the roadway at the Intersection. According to several witnesses who had traveled through the Intersection, the line of sight of a driver looking left toward the northbound lanes was obstructed by the oak trees sitting at the edge of the roadway, although the degree of obstruction varied depending on the vantage point of the driver traversing the Intersection such that the

---

[4] As the nonmovant on summary judgment, the facts are construed in favor of Plaintiffs. However, Plaintiffs bear the burden to establish a waiver of sovereign immunity. *Albertson v. City of Jesup,* 312 Ga. App. 246, 248-49 & n.9 (718 SE2d 4) (2011) (party seeking benefit of waiver has to establish waiver and thus trial court's subject matter jurisdiction).

obstruction might be total or near total at some points but only partial at other points. And, tests conducted at the scene by investigating officers using vehicles similar to those involved in the accident demonstrated there were two blind spots along the Intersection and that a car traveling from Lee Boulevard would have to "ease up" past the stop bar and intrude into the right northbound lane of White Bluff Road in order to have an unimpeded view. Further, evidence was also presented that drivers traveling northbound on White Bluff Road had difficulty seeing cars stopped at the Intersection because of the trees.

At the time of the accident, Muse, who had approached the Intersection from Lee Boulevard, was attempting to cross over the two northbound lanes of White Bluff Road in order to turn left onto the southbound lanes. However, as she pulled into the northbound lanes, her 2003 Honda Accord Coupe was struck on the driver's side by the 2001 Chevrolet Silverado pick-up truck driven by Officer West, who was traveling northbound on White Bluff Road. The impact shoved the Accord onto the center median north of the Intersection, up onto the curb, and into a utility pole on the passenger side.[5]

---

[5] The vehicles actually collided twice. There was the initial impact when West hit Muse, which caused both vehicles to move to the left and collide again, at which point Muse struck the pole.

4

Muse received an incapacitating brain injury as a result of the accident and has never been able to provide an account of what happened. The accident was extensively investigated, however, and police interviewed numerous other witnesses, including West and his passenger, fellow officer Christopher Brian Boatright. West told officers that he did not see Muse in the Intersection until moments before the collision and that he attempted to stop, but that he could not avoid hitting her. Several witnesses to the accident told police investigators that West appeared to be speeding, and some witnesses said they observed him moving in and out of the right and left lanes in order to maneuver around traffic;[6] at least one witness opined to police that Muse may not have seen West due to his speed and lane changes. Information obtained from the air bag module indicated that at approximately one second before deployment, West was traveling at 59 miles per hour; the posted speed limit was 40 miles per hour. And police concluded from the tire marks and angle of the vehicles that West was moving from the right lane to the left at the time of the collision.

---

[6] At the time of accident, Boatright told police West was traveling in the left lane, but later testified he was traveling in the right lane.

Several witnesses, including Boatright in his initial statement to police,[7] said they observed Muse stop before entering the intersection, although witness accounts differed concerning the precise point where she stopped, and one witness said it appeared to her that Muse was looking for oncoming traffic, but she could not be certain due to the distance. Based on the witnesses' accounts, one investigating officer concluded in his report that Muse stopped at the point where the roads intersect, or just into White Bluff Road.

Plaintiffs also presented the report and testimony from an accident reconstructionist, who, based on his reconstruction of the accident and the conditions at the Intersection, testified that in order to have a completely unobstructed view, a driver had to "nose" past the stop bar into the northbound lane of traffic. He also opined, based on his calculations of the pre-accident positions of the vehicles relative to the point of impact, West's vehicle was not visible to Muse as she began to cross White Bluff Road, and that by the time she could see his vehicle it was too late to avoid the accident, making a crash all but unavoidable. The expert also concluded

---

[7] Boatright later told police and testified in his deposition that he never saw Muse stop.

6

that had the visual obstructions been removed, both Muse and West would have been able to see each other in time to avoid the accident.[8]

1. *Sovereign Immunity.* We turn first to the threshold issue of sovereign immunity. *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524 (788 SE2d 122) (2016) (sovereign immunity is not in the nature of an affirmative defense, going to the merits of the cases, but instead raises the trial court's subject matter jurisdiction to try the case and should be decided at the outset); *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (1) (718 SE2d 4) (2011) ("sovereign immunity is a threshold issue that the trial court was required to address before reaching the merits of any other argument.").

Municipalities are protected by sovereign immunity pursuant to Article IX, Section II, Paragraph IX[9] of the Georgia Constitution unless that immunity is waived by the General Assembly or by the terms of the Constitution itself. *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015); *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003); *City of Greenboro v.*

---

[8] As the trial court noted, even if the City's request to exclude this evidence was granted, other evidence in the record supports the same conclusions.

[9] This provision provides: "The General Assembly may waive the immunity of counties, municipalities, and school districts by law."

7

*Rowland*, 334 Ga. App. 148, 149 (1) (778 SE2d 409) (2015). That immunity is reiterated in OCGA § 36-33-1 (a), which provides "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. . . ." However, subsection (b) of that section carves out a narrow waiver: "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." *Mitcham*, 296 Ga. at 577 (1).

For more than a century, "[t]his provision has . . . been interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties." *Mitcham*, 296 Ga. at 577 (1). One such ministerial duty, which also has been recognized for more than a century, is the duty of a municipality to maintain city streets in a reasonably safe condition for travel.[10] However, a city's

[10] See *Mayor of Montezuma v. Wilson*, 82 Ga. 206 (9 SE 17) (1888) ("A municipal corporation cannot be held liable for damages occurring by reason of a defect in its streets, sidewalks, sewers or bridges, when it has no notice thereof, or when such defect has not existed for a sufficient length of time from which notice can be inferred, provided the corporation has been guilty of no negligence in constructing

8

liability in this regard is specifically limited by statute as set out in OCGA § 32-4-93 (a):

> A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

Thus, "[s]tated positively, "municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." (Citation and punctuation omitted.) *Roquemore*, 274 Ga. App. at 423.

---

or repairing same."); *Mayor & Council of Dalton v. Wilson*, 118 Ga. 100 (44 SE 830) (1903) (setting out well established rule that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition). See also *Mayor and Aldermen of Savannah v. Johns*, 87 Ga. App. 719, 723 (75 SE2d 342) (1953) ("It seems that the liability of a municipality for failure to keep its streets and sidewalks in repair existed at common law, for Code § 69-303 [now OCGA § 32-4-93] was taken from the decision of our Supreme Court in *Mayor &c. of Montezuma v. Wilson*, 82 Ga. 806 (9 SE 17)[.]"); *Roquemore v. City of Forsyth*, 274 Ga. App. 420, 422-23 (617 SE2d 644) (2005) ("it is well settled . . . that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel . . . , and if it fails to do so, it is liable for damages for injuries sustained in consequence of such failure.") (citation and punctuation omitted.) See generally R. Perry Sentell Jr., *Statutes of Nonstatutory Origin* 14. Ga. L. Rev. 239, 256-57 (1980).

9

The question then turns on what constitutes a defect in the public roads under OCGA § 32-4-93 (a), and in particular, whether objects adjacent to the road that obstruct the view of travellers on the road are considered "defects in the public roads." As explained by this Court, "'defects in its streets' for which a municipal corporation may be liable under the provision of this code section (and its predecessor) have been held to include objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares more hazardous. (Cits.)' *Richards v. Mayor &c. of Americus*, 158 Ga. App. 693, 694 (282 SE2d 122) (1981)." *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 530 (2) (307 SE2d 47) (1983). Thus, in *Kicklighter*, we determined that a jury must decide whether a power pole located six inches outside the curb line of the street was a defect within the meaning of the statute rendering the City liable for injuries received by the plaintiff after his arm, which was propped in an open bus window, became wedged between the bus and the pole. Id. at 528.

Our Supreme Court has likewise explained well over a hundred years ago, that "[t]he municipality should not allow obstructions or excavations to adjoin the traveled way which will render its use unsafe and dangerous. Cities are liable for negligently permitting unguarded excavations near the line of the road or street, as well as for

10

negligently allowing obstructions likely to cause injury to be placed upon or near the line[.]" (Citation and punctuation omitted.) *City Council of Augusta v. Tharpe*, 113 Ga. 152, 155-56 (38 SE 389) (1901) ("[w]e are not able to say that a wire, . . . stretched along the margin of a sidewalk, which is part of a public street, would not be a dangerous obstruction[.])"; *Hammock v. City Council of Augusta*, 83 Ga. App. 217, 218-19 (63 SE2d 290) (1951) (rejecting City's contention that defects include only defects in the surface of a street or sidewalk and not defects on the side or above it).

Further, the City's liability is not limited to manmade objects or obstructions, but extends to "defects which are gradually brought about by the forces of nature" such as tree limbs or vegetation alongside the road. *Barnesville v. Sappington*, 58 Ga. App. 27, 28 (197 SE 342) (1938). See also *Richards*, 158 Ga. App. at 694 (involving a tree limb extending over the street which broke off and crushed plaintiff's husband's vehicle, killing him).

Although the City acknowledges that a "defect" within the meaning of section 32-4-93 may include natural conditions that occur alongside or over a street, it argues that this case is controlled by precedent in which we have specifically held that the removal of vegetation which blocks a driver's view of a traffic control device is a

11

governmental, not ministerial, function for which there is no waiver of sovereign immunity. See, e.g., *Albertson v. City of Jesup*, 312 Ga. App. 246, 249-50 (1) (718 SE2d 4) (2011). We disagree.

As an initial matter, although it is true that this Court has held that the City is immune from suit for claims arising from vehicular or pedestrian accidents that occur as the result of vegetation blocking the view of a traffic control device, our analysis in those cases focused on the fact that installing and maintaining traffic control devices involves a governmental function. Also, we specifically distinguished accidents resulting from obstructions to the view of oncoming traffic as opposed to the view of the traffic control device itself, which sovereign immunity covers. See *Albertson,* 312 Ga. App. at 249-50 (1) ("[B]ecause 'it is the obstruction of the [stop-sign], and not obstruction of the sight of oncoming traffic which [Plaintiff] contend(s) caused [him] to advance and collide,' sovereign immunity bars his recovery 'for even negligent exercise of this governmental function.'"); *Cyr v. Savannah*, 188 Ga. App. 261, 262 (372 SE2d 659) (1988) (Beasley, J., concurring specially) (same). See also *Roquemore*, 274 Ga. App. at 422-23 (distinguishing ministerial duty to maintain streets from governmental function of maintaining street lights); *McKinley v. City of*

*Cartersville*, 232 Ga. App. 659, 660 (503 SE2d 559) (1998) (distinguishing governmental function of installing stop signs at intersection).

Further, we have previously recognized that visual obstructions may be a factor in making a City's street unreasonably hazardous. See *Mayor and Aldermen of Milledgeville v. Holloway*, 32 Ga. App. 734, 735 (124 SE 802) (1924) (negligence action against the City not subject to demurrer when City had lawfully erected obstruction that was difficult to see due to a hill, forcing driver of car to veer into a ditch when he drove around it). Accordingly, in line with this long established precedent, we find that a jury must determine whether the tree located on the City's right of way obstructed the view of oncoming traffic such that it was a "defect" within the meaning of OCGA § 32-4-93.[11]

However, that does not end our analysis because the City is liable only if it had notice of the defect.

---

[11] Nor do we believe that our Supreme Court's decision in *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1968) requires a different result. *Phillips* involved a traffic light that blinked green in all directions, causing numerous accidents. The Court held that the improper operation of the traffic light did not constitute a "physical obstruction or defect in the street" under the predecessor to OCGA § 32-4-93. Id. at 837. The Court did not consider or address the issue of whether a driver on the road with an obstructed view of oncoming traffic may maintain an action under OCGA § 32-4-93.

> Constructive notice of a defect may be imputed through the knowledge of the city's employees or agents, or may be shown by testimony as to how long the defect existed prior to the injury, objective evidence that the defect existed over time, or evidence that others were injured as a result of the same condition over a period of years. . . . The question of constructive notice ordinarily is for the jury, except in the absence of any evidence of constructive notice that could create a fact question, and in such an instance, the issue of negligence is a matter of law. . . . Further, the length of time a defect must exist in order for an inference of notice to arise is ordinarily a jury question.

*Clark v. City of Atlanta*, 322 Ga. App. 151, 153 (744 SE2d 122) (2013).

Here, the record shows that the Director of Savannah's Traffic Department, Mark Weiner, visited the Intersection in 1998 to address another problem and noted that "several trees on the east side of White Bluff just south of Lee Boulevard" impaired driver "visibility on Lee Boulevard entering White Bluff Road." Weiner reported this finding and made a recommendation to remove the trees to the then-Director of Savannah's Public Works, but the trees were not removed at that time. In 2007, three years before Muse's accident, Nicholas Weaver was also hit at the Intersection while attempting to turn onto White Bluff Road after stopping at the stop sign on Lee Boulevard. The police report prepared following the 2007 accident contained a notation that Weaver's vision was obscured by trees, and Weaver testified

14

that the trees made it very difficult to see at the Intersection, and at least partially blocked his vision of the oncoming traffic and the vehicle that hit him. And in December 2009, about seven months prior to Muse's accident, an anonymous caller notified the City that the two trees, along with other vegetation, were obstructing the view for drivers attempting to go south onto White Bluff Road.

Although the City argues this evidence was insufficient to provide the requisite notice to the City because only one accident specifically attributed to the defect had occurred at the Intersection, we find sufficient evidence for a jury to determine whether the City had actual or constructive notice that the tree was obstructing the view of motorists traveling through the Intersection. E.g., *City of Fitzgerald v. Caruthers*, 332 Ga. App. 731, 734 (774 SE2d 777) (2015) (physical precedent only) (city's admission that it did not document every complaint about hazardous trees and evidence that the tree was visibly decaying was sufficient to create jury issue on knowledge); *Kicklighter*, 167 Ga. App. at 530-31 (2) (evidence that the pole had been in place for 24 years and bore scrape marks from passing vehicles sufficient to raise a fact question of implied notice); cf. *Carter v. Georgia Power Co.*, 204 Ga. App. 77 (418 SE2d 379) (city did not have notice that tree limb that fell was rotted when the limb appeared normal and there had been no record of any complaint or report about

the tree). Accordingly, Plaintiffs' negligence and nuisance[12] claims are not barred by sovereign immunity.

2. *Proximate Cause.* The City also contends that the trial court erred by denying its motion for summary judgment because Plaintiffs cannot establish that the obstruction in sight caused by the tree was a proximate or concurring cause of the accident, arguing that the evidence shows that the accident was wholly attributable to West's speeding and Muse's failure to yield.[13]

---

[12] The City has not asserted sovereign immunity bars the nuisance claim, and citing *City of Thomasville v. Shank*, 263 Ga. 624 (437 SE2d 306) (1993), the trial court made a threshold determination in its summary judgment order that the nuisance claim was not barred. Although we question the application of *Shank* to this case, we need not parse this issue since any waiver created by OCGA § 32-4-93 would also apply to the nuisance claim. See *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014) (explaining that *Shank* is premised on the takings clause of our Constitution); *Rowland*, 334 Ga. App. at 149 (1) (same); *Howard v. Gourmet Concepts Intl., Inc. v. Dekalb County*, 242 Ga. App. 521 (529 SE2d 406) (2000) (trial court properly granted summary judgment to County for an alleged nuisance causing personal injury because such injury does not constitute personal property that can be taken for purposes of inverse condemnation). But see *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 837-38 (165 SE2d 141) (1968) (plaintiff could maintain nuisance claim based on malfunctioning traffic signal without regard to whether it involved a governmental or ministerial function).

[13] The City argues that, as to proximate cause, this case is indistinguishable from and controlled by *Howard v. Gourmet Concepts Intl., Inc.*, 242 Ga. App. 521, 523 (1) (c) (529 SE2d 406) (2000), in which we found that even assuming the vegetation abutting the road obstructed the driver's view to some extent, the evidence showed that the other driver's excessive speed, failure to maintain control, failure to

16

"With respect to proximate cause, Georgia law is clear that (t)he proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently(,) and the person injured may recover from either or both of the persons responsible. The mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause."*Hayes v. Crawford*, 317 Ga. App. 75, 78 (730 SE2d 26) (2012). "[T]o establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. Conversely, no matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable." (Citations and punctuation omitted.) *Riggins v. City of St. Marys*, 264 Ga. App. 95, 98 (1) (a) (589 SE2d 691) (2003).

Although there are conflicts and contradictions in the evidence presented in this case, it appears established beyond dispute that the tree on the City's right of way created a partial or total obstruction for drivers attempting to navigate this

maintain a proper lookout and driving over the center of the road into the wrong lane was the sole proximate cause of accident in which the plaintiff suffered serious injury. However, not only is *Howard* factually distinguishable, it is legally inapposite because that case concerned a suit against a county, not a city, and involved a different statute, OCGA § 32-6-51 rather than OCGA § 32-4-93.

17

Intersection, although the extent of the obstruction and the extent of the danger created by the obstruction is disputed and are issues that must be resolved by the jury. Further, viewing the evidence in favor of Muse, as the nonmovant, there exists at least some evidence that Muse stopped at some point at the Intersection before proceeding, although it is unclear exactly where she stopped. The City argues that because there is no evidence that Muse stopped *and looked* before turning, it is entitled to summary judgment. But an eyewitness or testimony from Muse on this point is not required here when numerous witnesses testified that Muse came to a stop before turning. A reasonable inference from this evidence is that Muse stopped to look at traffic for her safety. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.") (citation and punctuation omitted.) Compare *Bacon v Mayor & Aldermen of the City of Savannah*, 241 Ga. App. 211 (525 SE2d 115) (1999) (obstruction was not proximate cause where child ran into street without stopping or looking); *City Council of Augusta v. Booker*, 229 Ga. App. 566, 567 (1) (494 SE2d 374) (1985) (physical precedent only) (weeds that may have obscured view of oncoming traffic condition was not proximate cause of wreck when child

18

admitted he did not stop and look before riding his bike into the street where he was hit by a car).

Additionally, although West's speed and frequent lane changes may have contributed to the accident, a jury could conclude that the fact that Muse's view of West's truck and West's view of Muse's vehicle may have been partially or wholly obstructed by the tree such that neither driver was able to see the other until it was too late also contributed to the accident. Accordingly, although it is possible in this case that a jury could determine that a number of factors contributed to the accident, we cannot eliminate as a matter of law the obstruction in line of sight caused by the tree as a proximate or concurring cause of the accident, and thus, summary judgment was properly denied. *Riggins*, 264 Ga. App. at 99 (1) (a).

3. *Avoidable Consequences*. The City also contends that Muse's claims are barred by the doctrine of avoidable consequences because having previously driven through the Intersection, Muse knew about the obstructed view and also knew that she could have avoided the Intersection entirely by taking a different route through an intersection on the easterly end of Lee Boulevard, which was controlled by a traffic light.

The doctrine of avoidable consequences is set out in OCGA § 51-11-7, which provides:

> If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

"In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." OCGA § 51-1-2. As with proximate cause, the question of whether the plaintiff exercised due care for her safety is ordinarily reserved for the jury, except in those cases where plaintiff's knowledge of the risk and lack of due care is clear and palpable. *Reed v. Carolina Cas. Ins. Co.*, 327 Ga. App. 130, 136 (762 SE2d 90) (2014); *Desai v. Silver Dollar City, Inc.*, 229 Ga. App. 160, 166 (5) (493 SE2d 540) (1997).

Here, Muse had regularly traveled through the Intersection for a number of years and, based on the overwhelming evidence that the trees caused at least some obstruction, would have been aware of the difficulty of seeing oncoming traffic. It is also undisputed that Muse used the other intersection about half the time. However, the evidence is conflicting as to the degree of obstruction caused by the tree, particularly in combination with a driver who was speeding and changing lanes at the

20

same time. Cf. *Weston v. Dun Transp. & Stringer, Inc.*, 304 Ga. App. 84, 88 (1) (695 SE2d 279) (2010) (plaintiff's decedent was aware that her view of oncoming traffic was completely obstructed, yet she entered the intersection); *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163 (433 SE2d 301) (1993) (summary judgment for defendant in premises liability action where plaintiff had equal knowledge of the dangerous condition posed by the exit but chose to use it instead of an alternative). Thus, genuine issues of material fact exist as to whether Muse by ordinary care could have avoided the consequences caused by the City's alleged negligence, and the trial court properly denied summary judgment on this ground.[14]

4. *Nuisance*. A public nuisance is defined in OCGA § 41-1-2 as "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." Thus, "a public nuisance requires some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common to all." (Citation and punctuation omitted.) *City of College Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209 (666 SE2d 607) (2008).

---

[14] Under the circumstances of this case, we decline to hold as a matter of law that the doctrine of avoidable consequences bars a plaintiff's claim when plaintiff had knowledge of a dangerous intersection but chooses not to use an alternative route and genuine issues of fact exist as to whether plaintiff otherwise exercised due care in traversing the intersection.

21

The Supreme Court has set out three guidelines to define a nuisance for which a city may be held liable. First, the defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. Second, the act must be of some duration, and the maintenance of the act or defect must be continuous or regularly repetitious. Third, the city must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.

*Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 727 (2) (548 SE2d 368) (2001);

*City of Bowman v. Gunnells*, 243 Ga. 809 (2) (256 SE2d 782) (1979).

The City argues that its tree on the right of way does not rise to the level of a nuisance because the degree of misfeasance did not exceed mere negligence and because there had been only one prior accident at the Intersection in which it was documented that the tree may have been a contributing factor. As discussed in Division 1, the City had the necessary notice of the obstruction in the line of sight caused by the tree as City records for over a decade before the accident had referenced the obstructed view. And a City worker sent to observe traffic at the Intersection after the accident documented a number of "near misses" during the short one half hour period she monitored the Intersection. In sum, although the City may continue to assert that no nuisance existed because there is only one prior documented accident at the Intersection due to the obstruction, genuine issues of material fact

22

exist as to whether the tree constituted a nuisance, which must be resolved by a jury.

E.g., *Kicklighter*, 167 Ga. App. at 531-32 (3); *Riggins,* 264 Ga. App. at 99 (1) (b).

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur*.