**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 18, 2025**

# In the Court of Appeals of Georgia

A25A0485. RYLES et al. v. CITY OF ATLANTA.

RICKMAN, Presiding Judge.

Kendra Ryles, as Administrator of the Estate of Tavarius Ridgeway, and Zahra Imani Ridgeway, as surviving minor child of Tavarius Ridgeway (collectively, "Ryles"), appeal the trial court's order granting the City of Atlanta's motion to dismiss. Ryles contends that the trial court erred in ruling that sovereign immunity barred her negligence claim and in ruling that Ryles could not base a nuisance claim on the City's failure to place crosswalks on the streets. For the reasons that follow, we affirm.

On appeal, we review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. We

> construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.

(Citation and punctuation omitted.) *City of Norcross v. Johnson*, 363 Ga. App. 78, 78 (870 SE2d 564) (2022). So viewed, the complaint alleged that Donald Lee Hollowell Parkway (the "Parkway") is a four-lane state road located within the City. On November 24, 2022, Tavarius Ridgeway was attempting to cross the Parkway on foot when he was hit and killed by a hit-and-run driver. There is no pedestrian crossing on the Parkway near where Tavarius attempted to cross.

Ryles subsequently filed this wrongful death action against the City, the Georgia Department of Transportation ("GDOT"), the driver of the car, Alonzo Demontez Dorsey, and other entities. Ryles alleged that the City and GDOT shared authority and control over the design and maintenance of the Parkway as well as the responsibility for its safety for use by the motoring public and pedestrians. Ryles further alleged that the City and GDOT were aware that the Parkway was dangerous for pedestrians but failed to include sufficient crosswalks and other safety devices designed to protect pedestrians, including in the area where Tavarius was struck by

the car.[1] As a result, Ryles asserted, the City was liable for the negligent design, inspection, and maintenance of the Parkway and for failing to take appropriate action to eliminate a public nuisance that resulted in Tavarius's fatal injuries.

The City filed a motion to dismiss on the grounds that (1) sovereign immunity barred Ryles's negligence claim, (2) it cannot be held liable under OCGA § 32-4-93[2] for the condition of the Parkway, and (3) there is no waiver of sovereign immunity for nuisance claims based on a municipality's failure to make a road safer. Ryles opposed the motion and submitted an affidavit from a highway engineering expert who reiterated the complaint's allegations that the Parkway is a dangerous street in need of additional crosswalks and other safety devices designed to protect pedestrians and that the City had control over and was liable for the negligent design and maintenance

---

[1] The complaint alleged that the City and GDOT were previously involved in litigation related to another pedestrian who was struck and killed on the Parkway near where Tavarius was hit. See *Wallace v. City of Atlanta*, 368 Ga. App. 260 (889 SE2d 438) (2023).

[2] "A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred." OCGA § 32-4-93 (a).

of the Parkway. The trial court granted the City's motion, ruling in favor of the City on all three asserted grounds, and dismissed all claims against it. This appeal followed.

1. Ryles contends that the trial court erred in granting the City's motion to dismiss based on sovereign immunity because the City waived that immunity by negligently performing its ministerial function of maintaining its street in a reasonably safe condition for travel.

Under Georgia law, claims against municipalities are barred by sovereign immunity unless that immunity is waived by the General Assembly. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; OCGA § 36-33-1 (a) (with limited exceptions, "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages"). Although municipalities are not liable for failure to perform or for errors in performing their governmental functions, they are liable for failure to perform or improper or unskillful performance of their ministerial functions. OCGA § 36-33-1 (b); *City of Atlanta v. Mitcham*, 296 Ga. 576, 578 (1) (769 SE2d 320) (2015); *Chatham Area Transit Auth. v. Brantley*, 353 Ga. App. 197, 199-200 (1) (834 SE2d 593) (2019).

"The determination of whether a function is governmental or ministerial in character for purposes of municipal sovereign immunity focuses broadly on the nature, purpose, and intended beneficiaries of the function performed by the municipal corporation." *Mitcham*, 296 Ga. at 581-582 (2). Traditionally, "[g]overnmental functions . . . have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality." *Mitcham*, 296 Ga. at 578 (2). In comparison, ministerial functions "are recognized as those involving the exercise of some private franchise, or some franchise conferred upon the municipal corporation by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest." (Citation and punctuation omitted.) Id.

Here, Ryles alleged that the City owed a duty to Tavarius "to provide a sufficient number of signalized pedestrian crossings on [the Parkway] so as to provide safe passage across the street by any pedestrian." Ryles further alleged that the City breached that duty and that its negligence proximately caused Tavarius's death.

As recognized by the trial court, the appellate courts in Georgia have held that deciding whether to erect or not to erect a traffic control device or to maintain it after

5

installation is an exercise of a governmental function by a municipality, and the municipality is not liable for any negligent performance of this function. See *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 836 (165 SE2d 141) (1968); *Arthur v. City of Albany*, 98 Ga. App. 746, 747-748 (2) (106 SE2d 347) (1958). This general rule has been applied to a city's failure to repair a defective traffic light, *Phillips*, 224 Ga. at 836, failure to maintain and properly place a stop sign, *Albertson v. City of Jesup*, 312 Ga. App. 246, 249 (1) (718 SE2d 4) (2011), failure to place signs or barricades to warn that a street is a dead end, *Englander v. City of East Point*, 135 Ga. App. 487, 487 (218 SE2d 161) (1975), and failure to replace a fallen stop sign, *Arthur*, 98 Ga. App. at 747-748 (2).

Ryles acknowledges this authority but argues that conduct that may typically constitute a governmental function may still be classified as a ministerial function where the conduct is related to the maintenance of streets and sidewalks to keep them safe for travel. In support of this argument, Ryles points to well-settled law that a municipality has a duty to maintain city streets and sidewalks in a reasonably safe condition for travel. See *Mayor & Aldermen of the City of Savannah v. Herrera*, 343 Ga. App. 424, 428 (1) (808 SE2d 416) (2017); *Roquemore v. City of Forsyth*, 274 Ga. App.

6

420, 422 (617 SE2d 644) (2005). A city's liability in this regard is limited, however, by OCGA § 32-4-93 (a), which, stated positively, means that "municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects [in the public roads] after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." (Citation and punctuation omitted.) *Herrera*, 343 Ga. App. at 428 (1).

The question then becomes what constitutes a defect in the public roads under OCGA § 32-4-93 (a) and, in particular, whether the lack of crosswalks or other safety devices designed to protect pedestrians is considered a defect under the statute. This Court has interpreted the reference to "defects" in the Code section to refer to "the physical condition of the street itself," including "defects brought about by the forces of nature and by persons and which render the street unsafe" and "objects adjacent to and suspended over the street." *McKinley v. City of Cartersville*, 232 Ga. App. 659, 660 (1) (503 SE2d 559) (1998). Consistent with that interpretation, this Court concluded in *City of Milton v. Chang*, 373 Ga. App. 667 (906 SE2d 784) (2024), that it was for the jury to determine whether a concrete planter located on the shoulder of the road and within the city's right-of-way, which posed a hazard for vehicles leaving

7

the travel lanes, was a defect in the road. *Id.* at 673 (1) (a) (i) (a). The issue of what constitutes a "defect" was also left to the jury in *Herrera*, 343 Ga. App. at 430 (1) (jury must determine whether tree located on city's right-of-way obstructed the view of oncoming traffic such that it was a "defect" within the meaning of OCGA § 32-4-93); *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 530 (2) (307 SE2d 47) (1983) (question of fact remained as to whether power pole located six inches outside the curb line was a defect in the street that would subject the city to potential liability for injuries suffered by the plaintiff after his arm, which was propped in an open bus window, became wedged between the bus and the pole); and *Barnum v. Martin*, 135 Ga. App. 712, 716-717 (3) (219 SE2d 341) (1975), disapproved of on other grounds by *Dept. of Pub. Safety v. Ragsdale*, 308 Ga. 210, 214, n.7 (839 SE2d 541) (2020) (evidence would support jury's finding that street at the site of the accident containing "a sharp curve with reverse super-elevation" that tended to force cars off the road was a defect under a predecessor to OCGA § 32-4-93 (Code § 69-303)).[3]

---

[3] Former Code § 69-303 provided: "If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from defects in its streets when it has no actual notice thereof, or such defect has [not] existed for a sufficient length of time for notice to be inferred." *Hammock v. City Council of Augusta*, 83 Ga. App. 217, 218 (1) (63 SE2d 290) (1951).

When addressing a city's potential liability for injuries alleged to have been caused by the failure to install a traffic control device, this Court has taken a different stance, holding that a "defect" does not include the lack of a barrier on top of a retaining wall on the shoulder of a road, *City of Alpharetta v. Hamby*, 352 Ga. App. 511, 515 (1) (b) (i) (835 SE2d 366) (2019), the failure to install a streetlight, *Glover v. Ga. Power Co.*, 347 Ga. App. 372, 378 (1) (819 SE2d 660) (2018), the failure to erect a stop sign, *McKinley*, 232 Ga. App. at 660 (1), or the lack of a sign or barricade, *Englander*, 135 Ga. App. at 488. Although this Court has not previously addressed whether a lack of crosswalks can be considered a defect in the public roads under OCGA § 32-4-93 (a), we conclude that the City's alleged failure to install "a sufficient number of signalized pedestrian crossings" on the Parkway is more like the failures outlined in the cases in this paragraph and therefore does not constitute a defect in the road for purposes of the statute. As a result, the trial court did not err in granting the City's motion to dismiss Ryles's negligence claim.

2. Ryles contends that the trial court erred in ruling that she could not base a claim for nuisance on the City's failure to place crosswalks on the Parkway.

Our Supreme Court has recognized that "[w]hile a municipality enjoys sovereign immunity from liability for negligent acts done in the exercise of a governmental function, it may be liable for damages it causes to a third party from the creation or maintenance of a nuisance." *Hibbs v. City of Riverdale*, 267 Ga. 337, 337 (478 SE2d 121) (1996); see also *Phillips*, 224 Ga. at 838 ("a municipal corporation cannot under the guise of performing a governmental function create a nuisance dangerous to life or health"). "The difficulty arises in determining what conduct or act on the part of a municipality will result in the creation or maintenance of a nuisance, as opposed to an action in negligence." *Hibbs*, 267 Ga. at 338.

To assist in making this determination, our Supreme Court has provided some guidance. In *City of Bowman v. Gunnells*, 243 Ga. 809 (256 SE2d 782) (1979), the Court established guidelines for determining whether a municipality will be liable for creating or maintaining a nuisance: the defect or degree of misfeasance must exceed the concept of mere negligence; the act complained of must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and the municipality must have failed to act within a reasonable time after knowledge of

the defect or dangerous condition. Id. at 811 (2). And in connection with its consideration of jury instructions on the subject, the Court explained:

> To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

 (Citations omitted.) *Mayor of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (i) (249 SE2d 224) (1978).

Georgia appellate courts have drawn a distinction between the negligent maintenance of something erected by the municipality in its discretion in such a manner as to create a dangerous nuisance and a discretionary nonfeasance. See *Gatto v. City of Statesboro*, 312 Ga. 164, 172 (2) (860 SE2d 713) (2021). Examples of cases falling in the first category include *Phillips*, 224 Ga. 834, where our Supreme Court held that a plaintiff had set forth a cause of action for "the operation and maintenance of a nuisance" when a municipality continued operation of a traffic light that would

11

flash either red or green on all four sides of the intersection simultaneously, resulting in numerous accidents of which the municipality was fully aware. Id. at 838. And in *City of Fairburn v. Cook*, 188 Ga. App. 58 (372 SE2d 245) (1988), disapproved of on other grounds by *Dept. of Pub. Safety v. Ragsdale*, 308 Ga. 210, 214, n.7 (839 SE2d 541) (2020), this Court upheld the trial court's denial of the city's motion for directed verdict on an injured motorist's claim that the city had created and maintained a nuisance when it installed traffic signals in a manner so as to be obscured by a preexisting railroad bridge. Id. at 65 (6); see also *Carter v. Mayor & Alderman of the City of Savannah*, 200 Ga. App. 263, 266 (1) (407 SE2d 421) (1991) (physical precedent only) (genuine issues of material fact remained as to whether city maintained a nuisance by failing to properly maintain a stop sign that had been removed from an intersection); *Mayor & Aldermen of City of Savannah v. AMF, Inc.*, 164 Ga. App. 122, 122-123 (295 SE2d 572) (1982) (evidence sufficient to create a jury issue on nuisance claim against the city where protruding limb of tree in the right-of-way of the street, which city was responsible for maintaining, damaged trailer).

Cases falling in the second category include *Tamas v. Columbus*, 244 Ga. 200 (259 SE2d 457) (1979), a wrongful death action brought by the mother of a child who

was traveling across a bridge and attempted to walk down the steep slope to the creek below when she slipped, fell into the creek, and ultimately drowned. Id. at 200-201. Addressing the plaintiff's claim that the proximate cause of her daughter's drowning was the city's negligence in failing to maintain the road in a safe condition, thereby creating a nuisance, our Supreme Court found the city's failure to provide "any fencing barriers, obstructions, or curbing to prevent parties from falling from the road or the areas immediately adjacent thereto" or "any signs or warning devices to warn travelers of the dangerous propensities of the creek" to be an "example of discretionary nonfeasance on the part of the defendant city," and held that the city was not liable to the plaintiff. Id. at 201-202. More recently, this Court addressed a plaintiff's claim that the City of Alpharetta had "permitted the existence and maintenance of a nuisance" by failing to prohibit left turns at the intersection where the plaintiff was injured, despite the city's knowledge of the hazardous condition this created, and held that the trial court erred in denying the city's motion to dismiss the plaintiff's nuisance claim because the plaintiff had only alleged that the city allowed a nuisance to exist, not that the city had taken any action that created a dangerous condition. *City of Alpharetta v. Vlass*, 360 Ga. App. 432, 436-437 (1) (861 SE2d 249)

(2021). The decision in *Vlass* is consistent with prior decisions of this Court. See *McLaughlin v. City of Roswell*, 161 Ga. App. 759, 760 (289 SE2d 18) (1982) (finding no merit to argument that the city created a nuisance by failing to identify school safety crossings across a public roadway in front of a school, relying on predecessor to OCGA § 36-33-2);[4] *Hancock v. City of Dalton*, 131 Ga. App. 178, 181 (205 SE2d 470) (1974) (city's failure to maintain traffic signals at a railroad crossing did not constitute a nuisance); *Bowen v. Little*, 139 Ga. App. 176, 176-177 (228 SE2d 159) (1976) (affirming dismissal of the city from an action alleging nuisance based on the city's failure to install a traffic light at an allegedly dangerous intersection).

Here, we are presented with a case of non-action by the City, similar to the situation in *Vlass*, not a case where the City installed pedestrian crosswalks and failed to maintain them. Based on existing precedent, which does not support the extension of a nuisance principle to this type of situation, we affirm the trial court's dismissal of Ryles's nuisance claim.

*Judgment affirmed. Gobeil and Davis, JJ., concur.*

---

[4] The predecessor statute at issue provided, "Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the same." *McLaughlin*, 161 Ga. App. at 760.